Grace **HOLT** et al., Plaintiffs,

v.

**Henry G. YONCE**, Individually and in official capacity as Chairman of the South Carolina Public Service Commission, et al., Defendants.

**Civ. A. No. 73-910.**

United States District Court,
D. South Carolina,
Columbia Division.

Heard Aug. 29, 1973.

Decided Oct. 1, 1973.

Judgment Affirmed March 18, 1974.
See 94 S.Ct. 1553.

Hemphill Pride, II, Tom Turnipseed, Columbia, S. C., Kenneth L. Holland, Camden, S. C., William M. Catoe, Jr., Kershaw, S. C., for plaintiffs.

William F. Austin, Columbia, S. C., for defendant Members of the S. C. Public Service Commission.

J. H. Fowles, Jr., Harry M. Lightsey, Jr., Columbia, S. C., Hubert E. Long, Lexington, S. C., James B. Richardson, Columbia, S. C., for defendant, S. C. Electric and Gas Co.

Before RUSSELL, Circuit Judge, and SIMONS and BLATT, District Judges.

## OPINION AND ORDER

PER CURIAM:

This is an action challenging the constitutionality of certain statutes under which the defendant South Carolina Electric & Gas Company, hereinafter designated as S.C.E. & G., has put into effect a temporary rate increase for its electric and gas services. The procedure for implementing such temporary increase for public utilities selling electricity is codified in Sections 24–31 et seq., of the 1962 Code of Laws of South Carolina; the procedure for establishing such temporary increase for public utilities selling gas is codified in Sections 58–111 et seq., of the 1962 Code of Laws of South Carolina. Plaintiffs are customers of the defendant S.C.E. & G. and propose to represent themselves and other similarly situated customers whose gas and electric rates are being increased. Additionally, said plaintiffs propose to represent a sub-class of in-

digent persons who allegedly will be unable to pay any rate increase without depriving themselves of other absolute necessities of life. The individual defendants are members of the South Carolina Public Service Commission, hereinafter designated as P.S.C., the agency charged by the General Assembly of South Carolina with the supervision of public utilities furnishing the services here involved. On motion, and with consent of all counsel, the defendants designated as members of the Board of Directors of S.C.E. & G. have been dismissed from this action.

On May 24, 1973, S.C.E. & G. filed notice with P.S.C. of an increased schedule of rates to be charged by it for gas and electricity, said increased schedule to become effective on July 2, 1973. Thereafter, on May 30, 1973, P.S.C. issued its Order suspending the effective date of such rate increase until January 2, 1974. Further, P.S.C. ordered that a public hearing be held on October 3, 1973, at which time evidence would be received from S.C.E. & G. to support the proposed new rate schedule and, likewise, evidence would be received from any other person or persons supporting or opposing the proposed rate increase. On or about June 11, 1973, S.C.E. & G. gave notice to P. S.C. that it intended to place its new rates into effect on July 2, 1973, despite the Order suspending the same by P.S.C. As required by the statute allowing a utility to temporarily place into effect a suspended rate increase, S. C.E. & G. filed an undertaking with P.S.C. to insure the refund, with interest, of any charges collected under the revised schedule, but ultimately found by P.S.C. to be unreasonable. Before the increase could be effectuated, utility rates were, until August 12, 1973, frozen under the national economic policy, and P.S.C. was promptly advised by S.C.E. & G. that the new rates would not go into effect until August 13, 1973. The proposed undertaking by S.C.E. & G. was approved by P.S.C., as to its sufficiency only, on July 24, 1973, and on August 1, 1973, the present action was instituted.

Predicating jurisdiction of this court on 28 U.S.C. Sections 1343(3) and 1343 (4), plaintiffs seek injunctive relief and the convening of a three-judge court to declare unconstitutional Sections 24–38 [1] and 58–115 [2] of the aforesaid Code of Laws of South Carolina to the extent that these statutes allow the defendant S.C.E. & G., or any other similarly

---

1. Section 24–38 of the South Carolina Code of Laws (1962) reads as follows:

"§ 24–38. *Rates made effective by giving bond or making other arrangements.*—Notwithstanding any such order of suspension the electrical utility may put such suspended rate or rates into effect on the date when it or they would have become effective if not so suspended by filing with the Commission a bond in a reasonable amount approved by the Commission, with sureties approved by the Commission, conditioned upon the refund, in a manner to be prescribed by order of the Commission, to the persons, corporations or municipalities respectively entitled to the amount of the excess, if the rate or rates so put into effect are finally determined to be excessive; or there may be substituted for such bond other arrangements satisfactory to the Commission for the protection of the parties interested."

2. Section 58–115 of the South Carolina Code of Laws (1962) reads as follows:

"§ 58–115. *Suspension of schedule and giving bond to put it in effect.*—To enable it to make such investigations as in its opinion the public interest requires, the Commission may, in its discretion, suspend the operation of the new schedule for a period not exceeding sixty days. Unless as a result of its investigation the Commission otherwise orders before the termination of such period of sixty days, such new schedule or schedules shall thereupon become effective. Should the Commission order the operation of any new schedule or schedules suspended, as herein provided, the public utility may put such new schedule into operation on the date when it would otherwise become effective by filing with the Commission a satisfactory bond or by making other arrangments satisfactory to the Commission for the protection, during such period of suspension, of the parties interested should the Commission, after full hearing, determine and order that such schedule shall not become effective in whole or in part or without change or modification."

situated public utility, to put into effect a temporary rate increase, without any prior hearing to determine the "reasonableness" thereof [3] by the filing of an undertaking, satisfactory to P.S.C. guaranteeing to repay all customers any part of the rate increase, with interest thereon, which is not thereafter approved by P.S.C. Plaintiffs allege that the practical effect of this procedure is to deprive indigent persons of electric and gas service, because this group will be unable to pay the increased cost of these essential services without depriving themselves of other more vital necessities of life. Thus, the plaintiffs contend that they are denied due process of law under the Fourteenth Amendment [4] by the statutes noted above in that such statutes permit citizens to be deprived, without a hearing, of essential services to which they are rightfully and constitutionally entitled. In so arguing, the plaintiffs contend that an increase in the cost of electric and gas service without a prior hearing is constitutionally analogous, for due process purposes, to the termination of welfare benefits, garnishment of wages, suspension of a driver's license, and dispossession of personal property, without a prior hearing in each instance.

The single judge to whom this case was first referred denied plaintiffs' request for a temporary injunction to prevent the implementation of the scheduled temporary rate increase on the ground that the plaintiffs had failed to prove that there was a reasonable probability that they would succeed on the merits of this case.[5] However, at the request of the single judge, a three-judge court was convened in accordance with 28 U.S.C., Sections 2281 and 2284.

Plaintiffs have brought this action pursuant to 42 U.S.C., Section 1983.[6] In effectuating the proposed rate increase, S.C.E. & G. and the individual members of P.S.C. clearly acted under color of state law, and the rights contended to be infringed are among those secured by the Constitution. Thus, the prima facie requirements for a Section 1983 violation are alleged. Palmer v. Columbia Gas of Ohio, Inc., 479 F.2d 153, 161–165 (6 Cir., 1973).

The single issue of consequence presented to this court by the present case is whether these plaintiffs are entitled to a hearing prior to the implementation of the rate increase. It is on this basis that the plaintiffs press for a holding by this court that Sections 24–38 and 58–115 are unconstitutional because the procedure for a prior hearing which would fulfill due process requirements is not provided therein. The plaintiffs cite a number of recent cases which have extended the constitutional perimeter of the due process clause.

---

3. Section 24–31 of the South Carolina Code of Laws (1962) established the following standard for rate increases:
   "§ 24–31. *Rates to be just and reasonable.*—Every rate made, demanded or received by any electrical utility or by any two or more electrical utilities jointly shall be just and reasonable."

4. The Fourteenth Amendment to the United States Constitution states in part . . . . "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; . . . ."

5. Numerous cases outline the general criteria that must be proven in determining the propriety of granting a temporary injunction in any given circumstance. The four most prominent are (1) probability of the plaintiff's success on the merits, (2) irreparable injury to the plaintiff's pendente lite, (3) balancing of equities between the plaintiff and defendant, and (4) consideration of the public interest. *See,* Battle v. Municipal Housing Authority of Yonkers, D.C., 53 F.R.D. 423 (1971).

6. 42 U.S.Code § 1983 reads as follows:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

These cases include Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (suspension of uninsured motorists drivers license); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed. 2d 556 (1971) (repossession of household goods); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (termination of welfare benefits); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (garnishment of wages); and several recent district court opinions which have decided that a hearing must be provided prior to the termination of electric service to an individual consumer in order for such termination to comply with the due process clause of the Fourteenth Amendment. Stanford v. Gas Service Company, 346 F.Supp. 717 (D.C. Kan.1972); Lamb v. Hamblin, 57 F.R. D. 58 (D.C.Minn.1972); Bronson v. Consolidated Edison Co. of New York, Inc., 350 F.Supp. 443 (D.C.N.Y.1972); Palmer v. Columbia Gas Company of Ohio, 342 F.Supp. 241 (D.C.Ohio 1972),

affd. 479 F.2d 153 (6 Cir., 1973); Davis v. Weir, 328 F.Supp. 317 (N.D.Ga. 1971). What the plaintiffs seek would require that this court analogize an increase in utility rates without a prior hearing to a termination of utility services without a prior hearing and, thus, hold that such increase constitutes a deprivation of property within the concept of the *Fuentes-Sniadach* line of cases noted above. To so hold would necessitate that this court extend *Sniadach* and its progeny to an uncharted point not supported by any cited authority. We refuse to sanction such an extension. Instead, we conclude that the instant case is controlled by the holding of the United States Supreme Court in the case of United Gas Pipeline Co. v. Memphis Light, Gas and Water Division, 358 U.S. 103, 79 S. Ct. 194, 3 L.Ed.2d 153 (1958). In that case, the United States Supreme Court upheld provisions of the Natural Gas Act [7] which allow for temporary rate

7. The pertinent provisions of the Natural Gas Act, 15 U.S.Code § 717c, are:

"(a) All rates and charges made, demanded, or received by any natural-gas company for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges, shall be just and reasonable, and any such rate or charge that is not just and reasonable is declared to be unlawful . . . .

(e) Whenever any such new schedule is filed the Commission shall have authority, either upon complaint of any State, municipality, State commission or gas distributing company, or upon its own initiative without complaint, at once, and if it so orders, without answer or formal pleading by the natural-gas company, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would

otherwise go into effect, and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission, to keep accurate accounts in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid, and, upon completion of the hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the natural-gas company, and the Commission shall give to the hearing and decision of such questions preference over other

increases without a prior hearing, and which provisions are substantially similar to the challenged parts of the South Carolina statutes. While it is true that the rates under the Natural Gas Act cannot be unilaterally increased by the utility involved until five months have elapsed after filing notice of such proposed rate increase, whereas the South Carolina statutes provide for only thirty days notice prior to an increase, this technical variation is of no legal import. In the *United States Gas Co.* case, supra, the United States Supreme Court in affirming the right of an interstate gas utility to raise its rates *ex parte* in conformity with the Natural Gas Act, made the following apposite comments, starting at page 113 of 358 U.S., at page 200 of 79 S.Ct.:

"United, like the seller of an unregulated commodity, has the right in the first instance to change its rates as it will. . . . The Act comes into play as to rate changes only in (1)

questions pending before it and decide the same as speedily as possible."

The same procedure is followed under the Federal Power Act, 16 U.S.C. § 824d:

"(a) All rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful . . . ."

"(e) Whenever any such new schedule is filed the Commission shall have authority, either upon complaint or upon its own initiative without complaint, at once, and, if it so orders, without answer or formal pleading by the public utility, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the public utility affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; and after full hear-

imposing upon the seller the procedural requirement of filing timely notice of charge, (2) giving the Commission authority to review such changes, and (3) authorizing the Commission, in the case of rates for sales of gas for other than exclusively industrial use, to suspend the new rates for a five-month period and thereafter to require the posting of a refund bond pending a determination of the lawfulness of the rates as changed. It seems plain that Congress, in so drafting the statute, was not only expressing its conviction that the public interest requires the protection of consumers from excessive prices for natural gas, but was also manifesting its concern for the legitimate interest of natural gas companies in whose financial stability the gas-consuming public has a vital stake. Business reality demands that natural gas companies should not be precluded by law from increas-

ings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of such five months, the proposed change of rate, charge, classification, or service shall go into effect at the end of such period, but in case of a proposed increased rate or charge, the Commission may by order require the interested public utility or public utilities to keep accurate account in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts are paid, and upon completion of the hearing and decision may by further order require such public utility or public utilities to refund, with interest, to the persons in whose behalf such amounts were paid, such portion of such increased rates or charges as by its decision shall be found not justified. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the public utility, and the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible."

ing the prices of their product whenever that is the economically necessary means of keeping the intake and outgo of their revenues in proper balance; otherwise procurement of the vast sums necessary for the maintenance and expansion of their systems through equity and debt financing would become most difficult, if not impossible. This concern was surely a proper one for Congress to take into account in framing its regulatory scheme for the natural gas industry, cf. Federal Power Commission v. Hope Natural Gas Co., 320 U. S. 591, 603 [64 S.Ct. 281, 88 L.Ed. 333], and we think that it did so not only by preserving the 'integrity' of private contractual arrangements for the supply of natural gas, [United Gas Pipe Line Co. v. Mobile Gas Service Corp.] 350 U.S. [332], at [page] 344 [76 S.Ct. 373, at page 380, 100 L.Ed. 373] (subject of course to any overriding authority of the Commission), but also by providing in § 4 for the earliest effectuation of contractually authorized or otherwise permissible rate changes consistent with appropriate Commission review.

"What has been said disposes of the question whether anything in the Natural Gas Act forbids a seller to change its rates pursuant to § 4 procedures simply because its customers have not agreed to the amount of the rate as changed . . ."

We feel that this decision of the United States Supreme Court is dispositive of all issues raised by the plaintiffs in the instant action, and we hold that the challenged statutes are not constitutionally infirm.

It is true that the increased gas and electric charges proposed by S.C.E. & G. may present an extreme hardship on indigent persons, and may directly benefit that Corporation. There is, however, a benefit to be received by the plaintiffs in particular and the public in general when reasonable increases in utility rates make possible expanded utility service to all who need it. The task of balancing the equities between a public utility and a class of persons using that utility's product does not rest in the initial stage with this court. The South Carolina Public Service Commission and the General Assembly of South Carolina provide appropriate administrative and legislative forums for the parties here involved to advance their conflicting positions.

Based on the foregoing, it is

Ordered, that the complaint herein be, and the same hereby is, dismissed.