SENIOR CITIZENS CLUBS OF WINSTON–SALEM, NORTH CAROLINA, et al., Plaintiffs,

v.

DUKE POWER COMPANY et al., Defendants.

No. C–C–74–76.

United States District Court, W. D. North Carolina, Charlotte Division.

Oct. 5, 1976.

Bertram Ervin Brown, II, Forsyth County Legal Aid Society, Winston-Salem, N. C., for plaintiffs.

Clarence W. Walker, Edgar Love, III, and John M. Murchison, Jr., Kennedy, Coving-ton, Lobdell & Hickman, Charlotte, N. C., for defendants.

Before HAYNSWORTH, Chief Judge, Fourth Circuit, and McMILLAN and WARD, District Judges.

HAYNSWORTH, Chief Judge, Fourth Circuit:

The plaintiffs sought injunctive relief against the implementation of an increase in the power company's rates for electricity. They allege that a North Carolina statute, permitting such increases after the expiration of six months of a suspension period, is unconstitutional insofar as it permits the power company to implement the increase before the conclusion of a full due process hearing as to the reasonableness of the increase. Because an injunction was sought against the application and enforcement of the statute upon the ground that it was unconstitutional, this three-judge district court was convened.

North Carolina, by its general statute § 62–134(a), permits an electric utility to increase its rates by giving notice to the North Carolina Utilities Commission thirty days in advance of the proposed increase. By § 62–134(b), however, the Commission is empowered to suspend implementation of the increase in order to permit it to hold hearings into the reasonableness of the rates. The Commission's power of suspension, however, is limited by § 62–135. Notwithstanding the Commission's suspension of the rates, § 62–135 provides that the utility may implement its rate increase after it has been in suspension for six months or more if it files with the Commission a secured undertaking, satisfactory to the Commission, to refund all collections under the new rates insofar as they exceed the rates which the Commission ultimately determines to be just and reasonable. Interest must be paid upon such refunds. It is that section, 62–135,[1] which is challenged by this action.

---

1. North Carolina General Statute, § 62–135: *Temporary rates under bond.—*
(a) Notwithstanding an order of suspension of an increase in rates, any public utility except a common carrier may, subject to the provisions of subsections (b), (c) and (d) hereof, put such suspended rate or rates into effect upon the expiration of six [6] months

The plaintiffs allege that they are a group of elderly poor people. They allege that the rate increase will have a substantial adverse effect upon their economic well-being, indeed, it will have an adverse impact upon their financial ability to provide themselves with adequate and wholesome meals. To the extent that the increase is implemented prior to the conclusion of the full hearing before the Commission and Commission approval of the increase, the plaintiffs allege it will deprive them of property rights without due process of law in violation of the Fourteenth Amendment. They rest their claim on 42 U.S.C.A. § 1983.

■ The plaintiffs can not succeed for at least two reasons. Implementation of the rate increase without the Commission's approval does not involve the requisite state action in a proceeding under § 1983. If the merits are reached, North Carolina's regulatory scheme meets all due process requirements.

## I.

*Jackson v. Metropolitan Edison, Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) presented a challenge to an electrical utility's right to terminate a customer's service without a hearing. The utility had filed a tariff with the Pennsylvania Public Utilities Commission in which it reserved such a right of termination. The Commission had not disapproved that provision. In those circumstances, the Supreme Court held that termination of the service did not involve state action by Pennsylvania. It held that no more was shown "than that Metropolitan was a heavily regulated, privately owned utility, enjoying at least a partial monopoly in the providing of electrical service within its territory, and that it elected to terminate service to petitioner in a manner which the Pennsylvania Public Utilities Commission found permissible under state law".

We find the present situation indistinguishable from *Jackson.* Duke Power, as Metropolitan Edison, is a heavily regulated utility, enjoying a monopoly in providing electrical service within its territory. The North Carolina Utilities Commission is heavily involved in rate making, and it was serving a very positive role during its inquiry into the reasonableness of this increase, but its power of suspension is limited to a six months period. After that, it has no power to prevent the utility's implementation of the increase if the utility files

after the date when such rate or rates would have become effective, if not so suspended, by notifying the Commission and its consumers of its action in making such increase not less than [ten] 10 days prior to the day when it shall be placed in effect; provided, however, that utilities engaged in the distribution of utility commodities bought at wholesale by the utility for distribution to consumers may put such suspended rate or rates, to the extent occasioned by changes in the wholesale rate of such utility commodity, into effect at the expiration of [thirty] 30 days after the date when such rate or rates would become effective if not so suspended; provided that no rate or rates shall be left in effect longer than one year unless the Commission shall have rendered its decision upon the reasonableness thereof within such period. This section to become effective July 1, 1963.

(b) No rate or rates placed in effect pursuant to this section shall result in an increase of more than twenty per cent (20%) on any single rate classification of the public utility.

(c) No rate or rates shall be placed in effect pursuant to this section until the public utili-ty has filed with the Commission a bond in a reasonable amount approved by the Commission, with sureties approved by the Commission, or an undertaking approved by the Commission, conditioned upon the refund in a manner to be prescribed by order of the Commission, to the persons entitled thereto of the amount of the excess and interest at the rate of six per cent (6%) per annum from the date that such rates were put into effect, if the rate or rates so put into effect are finally determined to be excessive.

(d) If the rate or rates so put into effect are finally determined to be excessive, the public utility shall make refund of the excess plus interest to its customers within [thirty] 30 days after such final determination, and the Commission shall set forth in its final order the terms and conditions for such refund. If such refund is not paid in accordance with such order, any persons entitled to such refund may sue therefor, either jointly or severally, and be entitled to recover, in addition to the amount of the refund, all court costs and reasonable attorney fees for the plaintiff, to be fixed by the court.

the requisite bond to secure the payment of whatever refunds, with interest, later may be required. The Commission's role in approving the bond for the refunds, however, is purely ministerial. It has no right to disapprove a proper bond when a proper secured undertaking is filed. Then, it simply has no power under state law to prevent implementation of a rate increase. North Carolina's legislature might have conferred broader powers upon the Commission, but it did not do so, and, to the extent that it did not, it left the utility in the position of an unregulated seller of services. As in *Jackson,* the utility has simply exercised a choice permitted it by state law. And, as in *Jackson,* the initiative came from the utility and not from the state. Hence, *Jackson's* conclusion that under those circumstances state action was not involved is controlling here.

Accordingly, a majority of us would dismiss the complaint.

## II.

In light of the dissent of our brother McMillan as to dismissal, we go to the merits, and we see no due process deprivation.

█ Any state must approach its regulation of electric utility rates with several considerations in mind. The utility, enjoying a monopoly, must provide adequate service to its customers today and tomorrow at rates which are just and reasonable. It must not charge its current customers on the basis of rates which are more than reasonable, but it must not neglect to make adequate provision which may be required of it to meet the demand for its services which may be expected in the years to come. In areas in which the population is on the increase, industry is expanding and the use of electrical machinery and appliances is growing on a per capita and per household basis, both the state and the utility must be concerned with its capital requirements and the expansion of its productive capacity to meet predictable future requirements. Thus, neither the Commission, the state, nor the utility may look alone to the immediate needs or preferences of these plaintiffs or, indeed, of the utility's current

customers collectively. The three must look to tomorrow and to the needs and interests of those who will be customers of the utility several years hence.

█ North Carolina's regulatory scheme with respect to rate increases strikes a reasonable balance between these considerations, even if they be thought sometimes competing. The power of the Commission to suspend a rate increase under investigation for a six months period gives an absolute preference for that period to the interest of current customers in paying no more than they have been paying for the electricity they consume. If increases may be suspended for longer periods, however, the interest of a utility's future customers may be impaired by the lack of adequate capacity to serve their needs. Thus, under the North Carolina statute, after lapse of the six month period during which the interest of present customers has an absolute preference, a conditional preference is given to the interest of future customers by permitting the implementation of the increase subject to mandatory refund to the extent that the implemented increase is larger than the rates ultimately approved by the Commission.

It would be nice, of course, if the Commission could conclude its hearings within the six months period, but rate regulation is not an uncomplicated thing. Extensive hearings may be necessary, and all of the relevant data may not be analyzed in a day.

Our conclusion is dictated by the Supreme Court's summary affirmance of *Holt v. Yonce,* D.C.S.C., 370 F.Supp. 374. There a three-judge district court upheld the constitutionality of a similar regulatory scheme of South Carolina, though there the Commission had no power of suspension. Implementation of the rate increases subject to refund was held not to deprive complaining customers of their right of due process.

The conclusion of the three-judge court in *Holt* was foreshadowed by the decision of the Supreme Court in *United Gas Pipeline Co. v. Memphis Light, Gas & Water Division,* 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d

153. It was specifically but summarily affirmed by the Supreme Court. *Holt v. Yonce,* 415 U.S. 969, 94 S.Ct. 1553, 39 L.Ed.2d 867.

■ We are recently reminded by the Supreme Court that its dismissal of appeals for want of a substantial federal question are rulings on the merits binding upon subordinate courts such as this. *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). A summary affirmance is surely no less binding than a dismissal for want of a substantial federal question. This case is indistinguishable from *Holt,* and our inquiry need go no further than recognition that the Supreme Court has decided the substantive issue tendered here.

For these reasons, the complaint will be dismissed.

McMILLAN, District Judge, concurring in result only:

State action, I believe, is involved. On this question I agree with the reasoning of *Holt v. Yonce,* 370 F.Supp. 374 (Three-Judge Court, District of South Carolina 1973), *affirmed without opinion* 415 U.S. 969, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974), which held (page 376) that a South Carolina power company, in setting temporary power rates under a similar statute, "clearly acted under color of state law, and the rights contended to be infringed are among those secured by the Constitution . . ." and that a suit like this one is validly constituted under 42 U.S.C. § 1983. *Sellers v. Iowa Power and Light Co.,* 372 F.Supp. 1169 (S.D.Iowa 1974); *cf. North Carolina ex rel. Utilities Commission v. Virginia Electric and Power Company,* 285 N.C. 398, 206 S.E.2d 283 (1974).

The majority rejects the "state action" holding of *Holt* but cites its "due process" holding as a controlling precedent because of the Supreme Court's summary affirmance. If *Holt* controls anything, it should control the state action issue as well as the due process issue. It seems more likely, however, that the true stature of the *Holt* case is that described by Chief Justice Burger, concurring, in *Fusari v. Steinberg,*

419 U.S. 379, 391, 95 S.Ct. 533, 541, 42 L.Ed.2d 521 (1975):

". . . When we summarily affirm, without opinion, the judgment of a three-judge District Court we affirm the judgment but not necessarily the reasoning by which it was reached. An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by this Court of doctrines previously announced in our opinions after full argument. *Indeed, upon fuller consideration of an issue under plenary review, the Court has not hesitated to discard a rule which a line of summary affirmances may appear to have established. E.g., Edelman v. Jordan, supra,* 415 U.S. [651] at 671 [94 S.Ct. 1347 at 1359, 39 L.Ed.2d 662]; *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 343–344 [89 S.Ct. 1820, 1823, 23 L.Ed.2d 349] (Harlan, J., concurring); id., at 350 [89 S.Ct. 1820 at 1827] (Black, J., dissenting); *Reynolds v. Sims,* 377 U.S. 533, 614 [84 S.Ct. 1362, 1408, 12 L.Ed.2d 506] (1964) (Harlan, J., dissenting)." (Emphasis added.) (Footnote omitted.)

*Jackson v. Metropolitan Edison Company,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), does not require a different view. In *Jackson* the Supreme Court decided only that state action was not involved when the power company cut off electric service for nonpayment of a bill, under the authority of a tariff filed with, but not formally considered and approved by, the regulatory agency. The Court went to great lengths to point out that whether state action is present must be determined not by simple definition of the *entity* involved, but by analysis of the particular *conduct* under challenge; "detailed inquiry may be required in order to determine" whether the utility is doing the state's work. *Jackson* also relied upon the lack of proof that the Pennsylvania Public Utilities Commission had ever approved or even formally considered the tariff authorizing utilities to cut off power, and upon the fact that the state took no part in cutting off power and had specified *no* procedures which had to be followed to do it.

*Jackson* is a far cry from this case. Rate making in North Carolina as opposed to circuit breaking in Pennsylvania is totally controlled by statute and regulation. Moreover, shutting off service for nonpayment of bills by defaulting customers has strong equity in its favor. By contrast, the plaintiffs in this case are in default on nothing, and making utility rates is a process in which the Commission is required by statute to be deeply involved. Rate making is judicial in nature, controversial in public aspect, and technical in detail. Because *Jackson* does not require, and the Supreme Court should not rule, that rate making is not state action, I would face and decide the due process question on its merits.

Next, I would find that, although their individual rights are small in dollars, plaintiffs as low income customers have a property right deserving of protection which triggers off due process requirements, and that these rights are of constitutional stature equal to the more imposing demands of future users for power. *Holt v. Yonce, supra; cf. Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *Compare North Georgia Finishing Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) *with Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) *and Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) *and Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

As to due process itself, the statutory scheme does not pass muster. The setting of higher power rates, temporary or otherwise, without notice or opportunity to be heard, which the statute authorizes, is not due process of law. With all due respect, I would not subordinate the present rights of present customers to the theoretical rights of future customers whose identity and rights are not yet known. The provisions for bond and refund are cold comfort to those whose property has thus been appropriated, *Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). I would hold that the statutory scheme, as of the time this suit was filed, does not provide due process of law.

Nevertheless, since, and possibly because, this suit was filed, the 1975 North Carolina General Assembly has passed laws (1975 Session Laws Chapters 45, 184, 243, 510 and 867), which, among other things: (a) enlarge the Utilities Commission from five to seven members; (b) authorize rate hearings and final decisions by panels of three instead of by the full commission; (c) eliminate the time-consuming "future test" period; (d) authorize the Commission to suspend decision on a rate request indefinitely until the utility has filed all information needed for a decision; (e) allow the Commission to accelerate arguments, dispense with briefs, and decide on the record and the oral arguments.

These changes, now implemented, have equipped the Commission to do its job in timely fashion; and because of these changes it is unlikely that rate increases in the future will take place without action of the Utilities Commission. Because, therefore, of the *de facto* mootness of the issue, though unable to share the majority's views of the law, I concur in the result.