John **CROSBY, Meredith O. Crosby, William Kliesch, Mae Virginia Kliesch, Vernon B. Rogers, Sr., Jo Anne Rogers, Charles E. Busby, Shirley A. Busby, Bruce Cabell and Leslie Cabell, Individually and as Representative of Class Members, Plaintiffs,**

v.

**CITY OF JACKSON (A Municipal Corporation), Defendant.**

**Civ. A. No. J92–0489(L)(C).**

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 28, 1993.

Thomas W. Busby, Albin Hopkins, Hopson, Dodson, Wyatt & Crawley, Gulfport, MS, for plaintiffs.

John Maxey, Maxey, Pigott, Wann & Begley, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant City of Jackson, Mississippi to dismiss plaintiffs' § 1983 claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiffs have responded to the motion and the court has considered the memoranda of authorities submitted by the parties in ruling on the motion. For the reasons that follow, the court concludes that defendant's motion is well taken and should be granted.

### THE ALLEGATIONS

Plaintiffs in this case allege that they are adult resident citizens of Hinds County, Mississippi who reside more than one mile outside of the municipal corporate boundaries of the City of Jackson, but who receive their water service from the city.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, contending that the City of Jackson violated their Fifth and Fourteenth Amendment property rights by increasing their water rates without first filing with the Mississippi Public Service Commission, as required by Miss.Code Ann. §§ 77–3–1, et seq.[2] Specifically, plaintiffs allege that they "possess a constitutionally protected vested property interest in water service tariffs, rates, and charges," and that the City of Jackson, by increasing rates without following appropriate regulatory procedures, deprived them of this property interest without due process of law. In addition, alleging a contractual relationship with the City of Jackson, plaintiffs assert a state law claim for defendant's alleged breach of an implied covenant of good faith and fair dealing by unlawfully overcharging them for water services between August 1985 and March 1992. As well as seeking recovery of refunds with interest, plaintiffs request declaratory and injunctive relief, attorney's fees under 42 U.S.C. § 1988 and punitive damages. Defendant has moved to dismiss plaintiffs' § 1983 claim on the ground that plaintiffs cannot establish a protected property interest in a utility rate for purposes of due process protection under the Fifth and Fourteenth Amendments to the United States Constitution.

### ANALYSIS

As noted above, plaintiffs' § 1983 claim is premised upon an alleged "constitutionally protected vested property interest in water service tariffs, rates and charges."[3] Defendant, however, cites nu-

1. Defendant has also moved to dismiss plaintiffs' supplemental state law claim, contending that since there is no diversity of citizenship between the parties, dismissal of the federal claim disposes of all claims over which this court has original jurisdiction.

2. Miss.Code Ann. § 77–3–1 provides that the Mississippi Public Service Commission shall not regulate municipally-owned utilities "except as to extension of utilities greater than one (1) mile outside corporate boundaries...." Other statutory provisions, all of which are included under the chapter entitled "Regulation of Public Utili-

ties," provide for procedures to be followed in the event a public utility desires to increase or otherwise change rates, including the filing of notice with the Public Service Commission and other administrative procedures. See Miss.Code Ann. §§ 77–3–1, et seq.

3. Plaintiffs' amended complaint states as follows:

Pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, the Plaintiffs possess a constitutionally protected vested property interest in water service tariffs, rates, and charges which have

merous cases holding that consumers do not have a protected property interest in utility rates encompassed within the scope of "life, liberty, or property" under the Fourteenth and Fifth Amendments.[4] If plaintiffs have no protected interest in utility rates under the Fifth and Fourteenth Amendments, they are unable to state a federal claim that the rates were adopted without due process of law. *See Georgia Power Project,* 409 F.Supp. at 338 (court found no property interest protected by Constitution in rates paid by consumers and "[t]herefore, the Court [found] it unnecessary to reach the second issue as to whether the plaintiffs, in fact, received due process …").

Plaintiffs attempt to distinguish many of the cases cited by defendant on the ground that they deal with constitutional challenges to statutory schemes whereas the instant case concerns allegations that the statutory scheme was not followed. In the court's opinion, whether the issue involved is a constitutional challenge to a rate-making statute or an allegation that such a statute was not complied with is, in this context, immaterial.

The Supreme Court made clear in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), that property interests are only created by "an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. at 27. In this case, the specific state law statutory provisions on which plaintiffs rely in an attempt to establish a protected property interest are as follows:

> No such public utility shall directly or indirectly by any device whatsoever, or in any way, charge, demand, collect or receive from any person or corporation for any service rendered or to be rendered by such public utility a greater or less compensation than that prescribed in the schedules of such public utility applicable thereto than filed in the manner provided in this Section. No person or corporation shall receive or accept any service from any such public utility for a compensation greater or less than prescribed in such schedules.

Miss.Code Ann. § 77–3–35.

> [N]o public utility shall make any change in any rate which has been duly established under this chapter except as provided in this chapter. Public utilities seeking a change in any rate or rates filed shall file with the secretary of the commission and the executive director of the Public Utilities staff the notice of intent to change rates.

Miss.Code Ann. § 77–3–37(1). According to plaintiffs, "[r]eading these two statutes together it is clear that the Mississippi legislature intended to create a property interest in the rates as filed and established by the Commission." It is the court's opinion, however, that these statutes do not create in a consumer a "legitimate claim of entitlement" to a particular rate; rather, they regulate the conduct of public utilities. *See Roth,* 408 U.S. at 577, 92 S.Ct. at 2709 ("To have a property interest in a benefit, a

---

been lawfully established pursuant to the statutory procedure clearly prescribed under Miss.Code Ann. §§ 77–3–1, *et seq.,* as well as the regulatory procedures set forth in the *Mississippi Public Service Commission Public Utility Rules of Practice and Procedure.*

Pursuant to the Fourteenth Amendment to the United States Constitution, the Plaintiffs possess a due process entitlement to receive water service tariffs, rates, and charges which have been lawfully established pursuant to the statutory procedure clearly prescribed….

The Plaintiffs' property interests and due process entitlements exist by virtue of the set of statutory and regulatory procedures which are to be followed by a public utility such as the City of Jackson in establishing its water

service rates and charges that the public utility charges its customers….

**4.** See *Kalinsky v. Long Island Lighting Co.,* 484 F.Supp. 176 (E.D.N.Y.1980); *Holt v. Yonce,* 370 F.Supp. 374, 376–77 (D.S.C.1973), aff'd mem., 415 U.S. 969, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974); *Sellers v. Iowa Power & Light Co.,* 372 F.Supp. 1169, 1171–72 (S.D.Iowa 1974); *Hartford Consumer Activists Ass'n v. Hausman,* 381 F.Supp. 1275, 1281 (D.Conn.1974); *Georgia Power Project v. Georgia Power Co.,* 409 F.Supp. 332, 340–41 (N.D.Ga.1974); *Davis v. Water–Sewer & Sanitation Comm'n or Comm'rs of Bowling Green,* 223 F.Supp. 902, 904 (W.D.Ky.1963); *State ex rel. Jackson County v. Public Service Comm'n,* 532 S.W.2d 20, 31–32 (Mo.1975).

person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). As the City of Jackson points out, this regulatory scheme is distinguishable from state legislation, such as welfare legislation, which clearly creates entitlements and benefits that extend to a particular class of individuals. *See, e.g., Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (person receiving welfare benefits under statutory and administrative standards *defining eligibility for them* has an interest in continued receipt of those benefits that is safeguarded by procedural due process). Indeed, "it is well established that the mere existence of a state rule does not necessarily create an interest protectable by the Due Process Clause, and that, therefore, a state does not necessarily violate the Constitution every time it violates one of its rules." *Riccio v. County of Fairfax,* 907 F.2d 1459, 1466 (4th Cir.1990) (citing *Olim v. Wakinekona,* 461 U.S. 238, 249–50, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983)). In the case *sub judice,* unless Mississippi law creates a protected property interest in a specific utility rate, such an interest under the federal Constitution will not necessarily be created solely by virtue of the state's statutory or regulatory procedural scheme. As previously noted, the court finds that the above-quoted statutory provisions on which plaintiffs rely regulate the conduct of public utilities in Mississippi and do not create in a consumer a sufficient property interest in a particular rate such that a utility's failure to follow the procedures therein for establishing a rate is violative of due process.

The Mississippi Supreme Court reached a similar conclusion with respect to another provision of Mississippi's statutory law governing the regulation of public utilities. In *Mississippi Power Co. v. Goudy,* 459 So.2d 257 (Miss.1984), a consumer brought an action against a power company challenging the utility's statutory authority to raise its rates under bond prior to a final determination of the authorized rate. *Id.*

at 259. The consumer in *Goudy* contended that the statute in question, Miss.Code Ann. § 77–3–39, was violative of the due process clause of the Mississippi Constitution, which the court held guaranteed the consumer the same rights as guaranteed by the Fourteenth Amendment to the United States Constitution. In support of her position, the consumer argued that under Miss.Code Ann. § 77–3–33 she had a property right in just and reasonable utility rates. *Id.* at 260.[5] Addressing this argument, the *Goudy* court began its analysis by quoting subsection (1) of that section, as follows:

(1) No rate made, deposit or service charge demanded or received by any public utility shall exceed that which is just and reasonable. Such public utility, the rates of which are subject to regulation under the provisions of this article, may demand, collect and receive fair, just and reasonable rates for the services rendered or to be rendered by it to any person. Rates prescribed by the commission shall be such as to yield a fair rate of return to the utility furnishing service, upon the reasonable value of the property of the utility used or useful in furnishing service.

*Id.* The court then concluded:

The above section is not a specific grant of a property right in reasonable rates to customers of a utility. Rather, it constitutes a regulation of the rate to be fixed by the public utility and provides that the rate shall be just and reasonable and that the public utility may collect and receive just and reasonable rates for the services rendered by it to any person. Situations may arise where public utility existing rates in which the customer has no property interest, might become unjust and unreasonable on account of the economy, increased wealth of the utility, or other reasons. Then, it would become the duty of the PSC to regulate those rates under the above section and require them to be just and reasonable.

*Id.* In regard to whether or not a protected property right has been created in a

---

5. The consumer admitted that she had no property right in existing utility rates. *Id.*

consumer under Mississippi's statutory laws governing the regulation of public utilities, this court sees no reason to interpret the statutes on which plaintiffs rely in this case any differently than the *Goudy* court interpreted the above provision of the same regulatory scheme.[6]

The court would note that in holding that plaintiffs in this case cannot establish a constitutionally protected property interest, the court finds the reasoning and conclusion of the court in *Georgia Power Project* compelling:

> The plaintiffs have no sufficient "property" interest in a given utility rate increase to invoke the procedural protections of the due process clause of the Fourteenth Amendment. Undoubtedly, the plaintiffs as consumers of a product have an interest in paying a lesser rate for their electricity as opposed to a higher rate. It would be the rare bird indeed whose interest would be otherwise. And in the sense that an increase in rates means a deprivation of a monetary sum—a sum perhaps needed to purchase other necessities of life—the interest that plaintiffs have here is more than "abstract need or desire" for lower rates.

However, the fact that plaintiffs have an interest in lower electric rates—an interest which they share with all consumers—does not mean that they have a sufficient "property" interest in lower rates to invoke constitutional due process protection. For one thing, the interest of the plaintiffs is much too general; that is, their interest is shared by practically everyone. In this sense their interest is somewhat "abstract." Of course, the simple fact that an interest is shared by everyone does not automatically mean that it is not deserving of constitutional protection. Nevertheless, it is interesting to note that most of the Supreme Court cases in this area involve either individual claims of entitlement or identifiable classes for whom a benefit was specifically intended. *See e.g. Bloodworth v. Oxford Village Townhouses, Inc.,* 377 F.Supp. 709 (N.D.Ga.1974); *Dew v. McLendon Garden Associates,* 394 F.Supp. 1223 (N.D.Ga.1975). In short, the constitutional due process clause was not intended to give procedural protection to every person who has an interest in action taken by the state even though that action may affect him by increasing the amount he must pay for a service. The courts are not the only forum wherein an aggrieved person may seek redress. This court is of the opin-

---

**6.** In support of their due process argument, plaintiffs urge that the Mississippi Supreme Court case of *South Central Bell v. Epps,* 509 So.2d 886 (Miss.1987), is authority for their position. Specifically, plaintiffs suggest that the *Epps* court, by recognizing that tariffs approved by the Public Service Commission are to be considered part of the service contract between the telephone company and the subscriber, "implied that the consumer had a property interest that needed protection." *Epps,* however, did not involve an allegation concerning a consumer's interest in a utility rate, but rather, involved a utility's improper termination of a customer's telephone service. Although violations of due process have been found where a utility terminates service without a prior hearing, courts, including the Mississippi Supreme Court, when determining what constitutes a deprivation of property, have refused to "'analogize an increase in utility rates without a prior hearing to a termination of utility services without a prior hearing.'" *Goudy,* 459 So.2d at 262 (quoting *Holt v. Yonce,* 370 F.Supp. 374, 376–79 (D.S.C. 1973), *aff'd mem.,* 415 U.S. 969, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974)). The court concludes that

*Epps* cannot be used to support the plaintiffs' due process claim.

The court further notes that plaintiffs' citations to several cases recognizing a *seller's* property interest in the rates which it is allowed to charge under a state regulatory scheme are also of no help to plaintiff. In the court's opinion, those cases do not stand for the proposition that a consumer has a protected property interest in a particular rate charged by a regulated utility. Indeed, as defendant correctly points out, the law has recognized a difference between a utility's interest (as a seller) in a specific rate and the interest of a consumer in a specific rate. A public utility has a right to a fair return on its investment. *Sellers,* 372 F.Supp. at 1173. As such, a reduction in rates by the state without notice to the utility might constitute a deprivation of the utility's property without due process. *See Mississippi Public Service Comm'n v. City of Jackson,* 328 So.2d 656 (Miss.1976). In sum, a utility's interest in rates is quite different from that of the consumer, the consumer's interest, as discussed previously, being insufficient to invoke due process protection.

ion that plaintiffs may not do so in this case as they have no "property" interest sufficient to invoke constitutional protection.

409 F.Supp. at 340–41. The court concludes that plaintiffs' § 1983 claim must be dismissed.

Having concluded that plaintiffs' federal claim should be dismissed, the court finds that since there is no diversity of citizenship between the parties, and thus no basis for this court to exercise original, as opposed to supplemental jurisdiction, plaintiffs' state law claim should be dismissed as well. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir.1989).[7]

Accordingly, it is ordered that defendant City of Jackson's motion to dismiss plaintiffs' § 1983 claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted. Further, plaintiffs' supplemental state law claim shall be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ORDERED.

---

7. The court would note that a scheduling order has not been entered and discovery has yet to be conducted in this case. Consequently, considerations of judicial economy do not militate against dismissal.