459 So.2d 257 (1984)
MISSISSIPPI POWER Company and South Central Bell Telephone Company
v.
Alvirena Goudy.
No. 54961.
Supreme Court of Mississippi.
October 10, 1984.
Rehearing Denied November 28, 1984.
*258 *259 James S. Eaton, H. Rodger Wilder, Eaton, Cottrell, Galloway, Lang & Stone, Gulfport, Rowland W. Heidelberg, F.M. Turner, III, Heidelberg, Sutherland & McKenzie, Hattiesburg, George H. Butler, Lawrence J. Franck, Butler, Snow, O'Mara Stevens & Cannada, A.S. Povall, Jr., Jackson, Roger M. Flynt, Jr., Birmingham, Ala., for appellant.
Kim T. Chaze, Jeremy Eisler, Hattiesburg, for appellee.
En Banc.
ROY NOBLE LEE, Presiding Justice, for the Court:
Mississippi Power Company [MPCo] and South Central Bell Telephone Company [South Central Bell] have appealed from a final decree of the Chancery Court, Forrest County, Mississippi, dated March 18, 1982. The final decree (1) declared unconstitutional all parts of the Mississippi Utility Act, Mississippi Code Annotated § 77-3-1, et seq. (1972), which authorized public utility rates to be placed in effect subject to refund under bond, pending final administrative or judicial determination, (2) enjoined MPCo and South Central Bell from further availing themselves of the provisions of said statutes, and (3) treated the action as a class action, ordering MPCo and South Central Bell to make monetary refunds to Mrs. Goudy and all other customers, amounting to almost $200,000,000. Following entry of the final decree, the chancellor declined to grant supersedeas. The appellants perfected their appeals here and, on April 5, 1983, this Court, acting through the Chief Justice, granted supersedeas of the said judgments.

Question Presented
The parties have conceded that the sole issue on this appeal is the constitutionality of Section 77-3-39, purely a legal issue. However, contained in that principal issue are the sub-issues of (a) no notice of hearing, which denies appellee due process, (b) unlawful delegation of legislative power to appellants, and (c) absence of a property right in appellee. The constitutional attack is upon Section 77-3-39 for the above reasons and appellee rests upon the contention that the provisions of Mississippi Constitution of 1890 are more restrictive than those of the United States Constitution.

Discussion of Issue(s)
Those sections of the Mississippi Constitution relied upon by appellee follow:
No person shall be deprived of life, liberty, or property except by due process of law. Art. 3, § 14.
Also, the pleadings bring into play Sections 1 and 2, Art. 1, and Section 33, Art. 4, Miss. Const. 1890, which vests government powers into the three distinct departments  the legislative, the judicial and the executive. The corresponding section of the United States Constitution, comparable to Art. 3, Sec. 14, Miss. Const. 1890, is Sec. 1, Amend. XIV, which states:

*260 Section 1... . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
Appellants first argue on this question of constitutionality that the appellee had no property interest in existing rates, and, therefore, had no standing to bring the present action. They cite authority for that position.
The appellee admits that she has no property interest in existing utility rates, but contends that under Section 77-3-33 she has a property right in just and reasonable rates, which authorizes the action. Subsection 1 of that section follows:
(1) No rate made, deposit or service charge demanded or received by any public utility shall exceed that which is just and reasonable. Such public utility, the rates of which are subject to regulation under the provisions of this article, may demand, collect and receive fair, just and reasonable rates for the services rendered or to be rendered by it to any person. Rates prescribed by the commission shall be such as to yield a fair rate of return to the utility furnishing service, upon the reasonable value of the property of the utility used or useful in furnishing service.
The above section is not a specific grant of a property right in reasonable rates to customers of a utility. Rather, it constitutes a regulation of the rate to be fixed by the public utility and provides that the rate shall be just and reasonable and that the public utility may collect and receive just and reasonable rates for the services rendered by it to any person. Situations may arise where public utility existing rates in which the customer has no property interest, might become unjust and unreasonable on account of the economy, increased wealth of the utility, or other reasons. Then, it would become the duty of the PSC to regulate those rates under the above section and require them to be just and reasonable.
The section under attack, as stated, is Section 77-3-39, which appellee contends is unconstitutional because it does not provide for notice and due process of law to the customer before rates are put into effect by the utility. The section follows:
Whenever there is filed with the commission by any public utility any schedule or notice stating a rate or rates differing from the rate or rates theretofore in effect, the commission may, either upon complaint or upon its own initiative, upon reasonable notice, enter upon a hearing concerning the lawfulness of such rate or rates.
Pending such hearing and the decision thereon the commission, upon delivering to the utility affected thereby a statement in writing of its reasons therefor, may, at any time before they become effective, suspend the operation of such rate or rates, but not for a longer period than ninety days beyond the time when such rate or rates would otherwise go into effect. However, if the commission shall find that a longer time will be required for its determinations, the commission may extend the period for not to exceed six months from the date of filing such schedule or notice. Notwithstanding any such order of suspension, the public utility may put such suspended rate or rates into effect on the date when it or they would have become effective if not so suspended, by filing with the commission a bond in a reasonable amount approved by the commission, with sureties approved by the commission, conditioned upon the refund, in a manner and to the parties to be prescribed by order of the commission, of the amount of the excess, with lawful interest thereon, if the rate or rates so put into effect are finally determined to be excessive. There may be substituted for such bond other arrangements satisfactory to the commission for the protection of the parties interested. During any such period when suspended *261 rates are in effect under bond or other arrangement the commission may, in its discretion, require that the public utility involved shall keep an accurate account of payments made under the rate or rates which the public utility has put into operation in excess of the rate or rates in effect immediately prior thereto.
If, after such hearing, the commission shall find any such rate or rates to be unjust, unreasonable or unreasonably discriminatory, or in anywise in violation of the law, the same shall be set aside and the commission shall determine and fix by order such rate or rates as will yield a fair rate of return to the public utility for furnishing service to the public and shall make and file its conclusions and findings of fact supporting such order. A copy of such order shall be served upon the utility in the manner provided in this article, and the rates fixed by the commission shall be the legal rates until changed as prescribed by this article. Rates in effect under bond, or other arrangements satisfactory to the commission, may be continued in effect by the utility under the terms and conditions of said bond or other arrangement pending final determination of any appeal. [Emphasis added].
The appellants point out that statutes similar to the above almost universally have been upheld and no statute in the United States involving placing rates in effect under bond have been declared unconstitutional either by State or Federal Courts, and many decisions are cited, among them, Arizona Grocery Company v. Atchison, Topeka & Santa Fe Railroad Company, 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348 (1932); Sellers v. Iowa Power & Light Co., 372 F. Supp. 1169 (S.D.Iowa 1974); United Gas Pipeline Co. v. Memphis Light, Gas and Water Division, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153 (1958); NCAA v. Gillard, 352 So.2d 1072 (Miss. 1977); Holt v. Yonce, 370 F. Supp. 374 (D.S.C. 1973), aff'd 415 U.S. 969, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974); Walters v. Blackledge, 220 Miss. 485, 71 So.2d 433 (1954); and Oklahoma Gas & Electric Co. v. Lankford, 278 Ark. 595, 648 S.W.2d 65 (1983).
Appellee distinguishes the cases cited by appellants and argues that they are not authority on the present issue, since there are no state constitutions with exact language of the Mississippi Constitution and that the United States Constitution is likewise different in language from the Mississippi Constitution. Appellee cites and relies upon numerous authorities, including Tatum v. Wheeless, 180 Miss. 800, 178 So. 95 (1938), to the effect that Mississippi law governs whether or not a Mississippi statute violates the Mississippi Constitution. See also Memphis Light Gas & Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); and Oregon v. Hass, 420 U.S. 714, 43 L.Ed.2d 570, 95 S.Ct. 1215 (1975).
Resolution of the constitutional issue depends upon whether or not the pertinent sections of the Miss. Const. 1890 and the United States Constitution, both set forth above, are identical and mean the same thing. In NCAA v. Gillard, supra, which involved the constitutional right of a Mississippi State University football player to play football and avoid a suspension by the NCAA, the Court, speaking through Justice Bowling, said:
The basic decision of the case then is the simple statement that Gillard's "right" to engage in intercollegiate football is not a "property" right that falls within the due process clause of either section 14 of the Mississippi Constitution or the Fourteenth Amendment to the United States Constitution, both of which are identical. (Emphasis supplied) [352 So.2d at 1081].
Likewise, in Walters v. Blackledge, supra, the Court said:

The due process required by the Federal Constitution is the same "due process of law" which is required by Section 14 of the Constitution of the State of Mississippi; *262 ... . [220 Miss. at 515, 71 So.2d at 444].
Appellee contends that the Miss. Const. of 1890 is more restrictive than the United States Constitution because the latter simply provides that no state shall deprive any person of life, liberty or property without due process of law, while under the Mississippi Constitution, no person shall be deprived of life, liberty, or property except by due process of law.
Appellee's analysis of the United States and Mississippi constitutions presents a fine line of distinction, viz, the United States Constitution deals only with protecting the citizen in his rights from a violation by the state, while the state had the citizen to protect from all persons and all governments. The State of Mississippi, in enacting the Regulation of Public Utilities Act, provided the law and machinery which formed the basis of this suit. The appellant utilities, pursuant to that statute, put into effect their rates under bond. Therefore, the responsibility for the situation which now presents itself, results from the action of the state and the implementation of such action by utilities. Keeping in mind the argument of appellee that neither the United States Constitution nor any state constitution where the present issue has been addressed, is identical with the Miss. Const. of 1890, it is obvious that the Federal cases and the state cases addressing the question would hold the statute to be constitutional.
Appellants urge that the case of Holt v. Yonce, 370 F. Supp. 374 (D.S.C. 1973), summarily aff'd 415 U.S. 969, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974), is authority for their position. That case was decided by a three-judge Federal panel and involved a South Carolina statute similar to that of Mississippi. The statute was alleged to be unconstitutional under the Federal constitution and the three-judge panel held that it did not violate the Federal constitution. The panel said:
The single issue of consequence presented to this court by the present case is whether these plaintiffs are entitled to a hearing prior to the implementation of the rate increase. It is on this basis that the plaintiffs press for a holding by this court that Sections 24-38 and 58-115 are unconstitutional because the procedure for a prior hearing which would fulfill due process requirements is not provided therein. The plaintiffs cite a number of recent cases which have extended the constitutional perimeter of the due process clause... . What the plaintiffs seek would require that this court analogize an increase in utility rates without a prior hearing to a termination of utility services without a prior hearing and, thus, hold that such increase constitutes a deprivation of property within the concept of the Fuentes-Sniadach[1] line of cases noted above. To so hold would necessitate that this court extend Sniadach and its progeny to an uncharted point not supported by any cited authority. We refuse to sanction such an extension. Instead, we conclude that the instant case is controlled by the holding of the United States Supreme Court in the case of United Gas Pipeline Co. v. Memphis Light, Gas and Water Division, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153 (1958). In that case, the United States Supreme Court upheld provisions of the Natural Gas Act which allow for temporary rate increases without a prior hearing, and which provisions are substantially similar to the challenged parts of the South Carolina statutes... . In the United States Gas Co. case, supra, the United States Supreme Court in affirming the right of an interstate gas utility to raise its rates ex parte in conformity with the Natural Gas Act, made the following apposite comments, starting at page 113 of 358 U.S., at page 200 of 79 S.Ct.:

*263 Congress, ... was also manifesting its concern for the legitimate interest of natural gas companies in whose financial stability the gas-consuming public has a vital stake. Business reality demands that natural gas companies should not be precluded by law from increasing the prices of their product whenever that is the economically necessary means of keeping the intake and outgo of their revenues in proper balance; otherwise procurement of the vast sums necessary for the maintenance and expansion of their systems through equity and debt financing would become most difficult, if not impossible... . [370 F. Supp. at 376-379].
The case was affirmed by the United States Supreme Court without an opinion. Appellee argues that the case is no authority for the question here, which deals solely with the Mississippi Constitution, and, further, that the opinion was written by a three-judge Federal panel, and did not amount to precedent, since the United States Supreme Court did not address the question in its own language. In Fusari v. Steinberg, 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975), the Court said that, in affirming an opinion, it did not necessarily adopt the reasoning by which it was reached. However, the Court did not say that it summarily rejected the reasoning either. Holt, supra, involved a question similar to that in the present case, and, we think the reasoning and conclusion are excellent on the point.
The appellee cites and discusses Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed. 30 (1978), as a guide in deciding the case sub judice and that they were decided after Holt and furnished more guidance than Holt. However, Eldridge does not deal with utility rate increases, but involves the Social Security Administration's termination of disability benefits that the recipient had been receiving. Eldridge does not indicate any intention of overruling Holt or changing the holding in that and similar cases on utility rates. Craft does not have the precise question here. It involved the question of whether the termination of utility service by a municipally-owned public utility required notice and hearing. The case sub judice does not consider the question whether notice and hearing must be provided before utility service is terminated, but involves constitutionality of the rate under bond statute.
Knight v. PSC of West Virginia, 245 S.E.2d 144 (W. Va. 1978), was decided subsequent to Eldridge and Craft. The Court upheld rates placed in effect under a similar bond statute on the basis that the procedure enacted by the legislature provided for fundamental fairness and passed scrutiny under the due process clauses of both the Federal and West Virginia constitutions. In upholding the West Virginia statute, the Court relied upon Holt v. Yonce, supra; Sellers v. Iowa Power & Light Co., 372 F. Supp. 1169 (S.D. Iowa 1974); and other state and federal cases.
Appellees rely upon, among other cases, Bouslog v. City of Gulfport, 112 Miss. 184, 72 So. 896 (1916). However, that case involved assessment and levy of a tax on residents along the seawall in Gulfport, and they were given no notice to protest the assessment. Clearly the statute violated the Constitution, but it is not authority here.
We are of the opinion that (1) the appellee had no specific vested property right in a fair and reasonable utility rate, (2) there was no unlawful delegation of legislative power to the appellants, and (3) she was not denied due process of the law. Courts must presume that a statute enacted by the Legislature is constitutional and its unconstitutionality must appear beyond reasonable doubt. We cannot say that, in the case sub judice the statute is unconstitutional. Therefore, the judgment of the lower court is reversed and judgment is rendered here for the appellants.
REVERSED AND RENDERED.
*264 PATTERSON, C.J., WALKER, P.J., and HAWKINS and PRATHER, JJ., concur.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS and PRATHER, JJ., specially concur.
BOWLING, DAN M. LEE and ROBERTSON, JJ., dissent.
SULLIVAN, J., not participating.
HAWKINS, Justice, specially concurring:
I join the opinion of Justice Roy Noble Lee.
In doing so, I wish also to address the threshold question of jurisdiction of the Forrest County Chancery Court, and give additional reasons for my view that there was no due process violation in these rate increases under bond.
It is important to an understanding of these two matters that we extract from the record in this case and from the records in the rate cases: a chronology of the proceedings before the Mississippi Public Service Commission, the Hinds County Chancery Court, and the 1980 Mississippi Power Company rate case before this Court; and, as well, give the status of each while this case was pending in the Forrest County Chancery Court.
On October 20, 1980, Mississippi Power, pursuant to Miss. Code Ann. § 77-3-39 (§ 10, Chapter 372, Laws 1956), gave formal, statutory notice to the Commission of proposed rate changes to go into effect November 20, 1980, 30 days after filing. The notice stated the rate change was designed to increase revenues approximately 16.5%.
On October 24, 1980, the Commission entered an order directing an investigation and a hearing on the proposed rate increase, and suspended the proposed increase for a period of 90 days from the proposed effective date of the rate increase.
As required by Miss. Code Ann. § 77-3-39 and Rule 8(b) of the Commission, the Commission prepared the following Notice to the public:
NOTICE
Notice is hereby given that Mississippi Power Company has filed a Notice on October 20, 1980, of its intention to increase rates for the rendition of electric service throughout its service area in Southeast Mississippi; effective November 20, 1980, all as more fully described in said Notice.
The Commission, by Order, has suspended the operation of proposed rates for further investigation and will make this cause returnable to the next regular meeting of the Commission, which will be held on Tuesday, December 2nd, 1980, at the Mississippi Public Service Commission, 19th Floor, Walter Sillers State Office Building, Jackson, Mississippi, at 10:00 A.M., to determine a hearing date as the Commission may by order fix.
WITNESS My Hand and the Official Seal of the Mississippi Public Service Commission, this the 27th day of October, 1980.
 s/E.W. ROBINSON
 Executive Secretary
This Notice was published in the October 30, 1980, issues of the Clarion Ledger and the Daily Herald, which is a daily newspaper of general circulation on the Gulf Coast.
On November 10, 1980, Mississippi Power filed a petition with the Commission to approve a refunding bond. The petition recited the above facts, and further alleged that the power company under § 10, Chapter 372, Laws 1956 (Miss. Code Ann. § 77-3-39), was authorized to put the suspended rate increase into effect on November 20, 1980, by filing bond as required under the Act, and that the Company desired to avail itself of the rights granted by the Act.
On November 17, 1980, the Commission entered an order authorizing Mississippi Power, upon filing a bond of $20 million to put the proposed rate increase into effect, beginning November 20, 1980, all as set *265 forth in the power company's original notice filed with the Commission.
The company filed a $20 million bond and the rates were increased beginning November 20, 1980.
On December 18, 1980, the Commission entered an order setting forth the procedure for hearing of testimony and receipt of evidence by all parties.
Numerous petitions objecting to the rate increase and to intervene were filed. Among these was a Petition for Leave to Intervene filed by numerous citizens of Harrison and Forrest counties. They were represented by the Mississippi Legal Services Coalition. They were also represented by a reputable and able law firm in Jackson. The petition recites that the Mississippi Legal Services Coalition was a joint venture of the grantees of the National Legal Services Corporation which operated in Mississippi and represented people who were impoverished and users and consumers of electricity furnished by the power company. South Mississippi Legal Services Corporation, also affiliated and a part of the Mississippi Legal Services Coalition, signed the petition along with the law firm in Jackson. The petition alleged that the rate increases would violate the statutory and constitutional rights of the petitioners, although it did not specifically allege any complaint that increasing the rates under bond would violate any constitutional right of the petitioners.
The Commission conducted extensive public hearings extending over a period of several months, from late 1980 into March, 1981, and on April 16, 1981, entered an order granting 27.7%, and denying 72.3% of the proposed increase.
The power company appealed to the Chancery Court of the First Judicial District of Hinds County, and on April 30, 1981, filed a petition with the court to stay the order of the Commission; on that date the Chancery Court stayed the order of the Commission, and suspended the enforcement of its order upon the continuation of the power company's bond in the amount of $20 million, which bond was approved.
The Chancery Court obviously gave thorough consideration of the appeal, and on March 19, 1982, entered an order approving approximately 84% of the amount of the proposed rate increase, and denying the remainder.
Both the Commission and the power company appealed the order of the Chancery Court to this court, and on March 23, 1983, we affirmed in part and reversed in part. Consistent with our opinion, on remand the Commission allowed approximately 47.35% of the requested increase and denied the remainder.
The record of this case on appeal comprised 16 volumes.

BELL 1982 CASE
On April 6, 1982, Bell pursuant to Miss. Code Ann. § 77-3-39 (§ 10, Chapter 372, Law of 1956), gave formal, statutory notice to the Commission of proposed rate changes to go into effect November 20, 1980, 30 days after filing, May 7, 1982. The notice stated the changes in rate schedules were designed to produce $98 million in additional annual revenues.
On April 8, 1982, the Commission directed an investigation and a hearing, and suspended the proposed rate increase (noticed to go into effect May 7, 1982) for a period of 90 days from and after May 7, 1982.
As required by Miss. Code Ann. § 77-3-39 and Rule 8(b) of the Commission, the Commission gave notice to the public as given in the Mississippi Power Case, supra, making this case returnable May 4.
The Commission notice was published in the Clarion Ledger April 14, 1982.
On April 21, 1982, Bell filed with the Commission a petition to approve a refunding bond, following the statute.
On April 22, 1982, the Commission authorized the filing of a bond in the amount of $50 million to put the proposed rate changes into effect beginning May 7, 1982, as provided in Bell's original notice with the Commission. Bell filed its bond May 4, 1982.
*266 On May 3, 1982, the Commission entered an order setting proposed rate changes of Bell, as set forth in its notice of April 6 for special hearing on June 28, 1982.[1] Notice of the public hearing was again given.
In May, 1982, the Mississippi Legal Services Coalition filed a petition to intervene in the proceedings before the Commission, purporting to represent citizens "who are improverished and who are now or who in the future will be users and consumers of goods and services provided by" Bell.
Following extensive public hearings the Commission entered an order on September 8, 1982, denying any rate increase.
Bell appealed to the Chancery Court of the First Judicial District of Hinds County, and on September 13, 1982, filed in that court a petition to stay the order of the Commission denying the rate increase by filing a bond to be approved by the court, as authorized by the Act (Miss. Code Ann. § 77-3-39 and Miss. Code Ann. § 77-3-69).
The Chancery Court on September 13, 1982, stayed the order of the Commission and suspended its enforcement until the court could review the case on appeal, and also approved the $50 million bond then in effect.
On October 7, 1983, the Chancery Court reversed and remanded the Commission order, from which an appeal was perfected by the State of Mississippi, Ex Rel; Edwin Lloyd Pittman, Attorney General; Mississippi Public Service Commission; Mississippi Legal Services Coalition v. South Central Bell, Cause No. 55,347, to this court, presently pending.
Goudy never appeared or objected individually to any rate increase in Bell's case.
The record on the Bell rate increase consists of 37 bound volumes.

MISSISSIPPI POWER 1982 CASE
On April 5, 1982, Mississippi Power filed the statutory notice with the Commission that it proposed to increase its rates 30 days later, beginning May 5, 1982.
On April 6, 1982, the Commission entered an order suspending the proposed rate increases, and gave the statutory notice as given in the above cases to the public, duly published in the April 13, 1982, issues of the Clarion Ledger and the Daily Herald.
Pursuant to Commission approval the power company on April 27, 1982, made a bond of $11 million, as authorized by statute, and the increased rates were put into effect May 5, 1982.
Again, extensive hearings were conducted from June 14, 1982, until August 21, 1982, by the Commission. Goudy appeared individually in this case before the Commission, objecting to any rate increase.
On October 1, 1982, the Commission entered an order denying the rate increase.
An appeal was perfected to the Chancery Court of the First Judiciary District of Hinds County that month, and that court stayed and suspended the Commission order denying any rate increase, and permitted the power company to continue charging the increased rates under the same $11 million bond.
That case has never been appealed from the Chancery Court of Hinds County to this court. Disposition of the proceedings has been either the Hinds County Chancery Court or the Commission.

FORREST COUNTY CHANCERY COURT ACTION
The Forrest County Chancery Court suit was filed August 6, 1982. Bell filed its answer September 7 and Mississippi Power its answer September 9, 1982. Both defendants also filed motions to dismiss and for judgment on the pleading pursuant to Rule 12(b) and (c) of the Mississippi Rules of Civil Procedure.
*267 On October 1, 1982, Goudy filed a motion for summary judgment pursuant to Rule 56.
Following an October hearing, the chancellor on November 8, 1982, entered an order denying the motions to dismiss.
Numerous affidavits and documents were filed by each side.
On January 13, 1983, the chancellor conducted a hearing on the plaintiff's motion for summary judgment, and on February 15, 1983, rendered an opinion granting plaintiff's motion for summary judgment.
On March 18, 1983, a final judgment was entered granting injunctive relief. The portion of Miss. Code Ann. § 77-3-39 authorizing an increase in rates under bond was declared to be violative of the Mississippi constitution. The defendants were enjoined from collecting all increased rates under bond, and directed to make refunds of the monies collected.
The chancellor overruled the petitions of the defendants for supersedeas on March 31, 1983. This court granted supersedeas on April 5, 1983.
If Mrs. Goudy were given all the relief she asked for in her Forrest County suit, her total savings would be considerably less than $75.00, payable over a period of one to three years.

LAW

Authority of Forrest County Chancery Court
Insofar as two utilities were concerned, Miss. Code Ann. § 77-3-5 is applicable. The pertinent portions state: "... The public service commission shall have exclusive original jurisdiction over the intrastate business and property of public utilities." On the date the Forrest County Chancery Court action was begun, August 6, 1982, Mississippi Power's 1980 rate case had been heard and decided by the Commission, reviewed on appeal by the Hinds County Chancery Court, and a 16-volume record was on appeal before this Court.
Also, on this date the Mississippi Public Service Commission had assumed original jurisdiction of the other two rate cases, and they were in progress, being heard and considered by the Commission. The consumer objectors, representing the same class which Mrs. Goudy is supposed to represent in the Forrest County action, indeed, in one case she appeared herself, did very well before the Commission. The Commission denied the utilities any relief in both cases.
By the time the Chancery Court of Forrest County considered the merits of the motion to dismiss, both these 1982 rate cases had been heard and considered by the Commission, and were before the Chancery Court of the First Judicial District of Hinds County on appeal, the only court authorized by statute to hear the appeal, Miss. Code Ann. § 77-3-67. Under this section the Chancery Court of Hinds County upon appeal is specifically authorized to vacate the Commission's order if it violates constitutional rights.[2]
Some eyebrows might be raised at the intrepidity of the Legal Services Coalition, while fighting a battle in one forum, simultaneously trotting 100 miles down the road and trying another facet of the same case in another forum. This may appear an unnecessary drain upon the already taxed and burdened case loads of our court system.
The question of the Chancery Court's jurisdiction in Forrest County should have been bluntly and vigorously contested at the threshold  the front door of the Forrest County action.
In fairness to the chancellor the following should be noted: While defense counsel raised the issue of jurisdiction in their answers and motions to dismiss, in their amalgamated wisdom they did not choose to *268 press the matter in the trial court. Their presentation at most was tepid.
The discombobulated gentlemen have seen fit to repair this defect in assiduity in their brief on appeal.
The issue is now clearly before this Court. It is also clear the Forrest County Chancery Court should never have heard this case.
The constitutional issue in the Forrest County Chancery Court suit should have been first addressed to the Commission, and it should have been addressed to the Hinds County Chancery Court, and finally to this Court considering these rate cases on appeal from the Hinds County Chancery Court. It was the function and responsibility of the Hinds County Chancery Court to hear the very constitutional questions raised in the Forrest County Chancery Court action. The same class of individuals were before the Hinds County Chancery Court.
Long ago, the United States Supreme Court stated in Interstate Commerce Commission v. Illinois Central Railroad Company, 215 U.S. 452, 470, 30 S.Ct. 155, 160, 54 L.Ed. 280, 288:
Beyond controversy, in determining whether an order of the Commission shall be suspended or set aside, we must consider (a) all relevant questions of constitutional power or right.
.....
Aside from the specific statutory mandate of Miss. Code Ann. § 77-3-67, this Court also stated long ago in Dixie Lines v. Mississippi Public Service Commission, 190 Miss. 704, 713, 200 So. 579, 580:
That a court of competent jurisdiction has the power to review any order made by an administrative commission whether it ... violates some statutory or constitutional right of an interested party, is so well settled as not to be open to any doubt.
Before foolishly permitting this skipping around and fighting the same battle (or different features of the same battle) in disparate forums, we might consider that two can tango. This time it was the consumer and her exemplary counsel. The next time it might be the utility company.
Indeed, this same thing was tried, the shoe was in fact on the other foot, and we did not permit it. In Illinois Central Railroad Company v. Mississippi Public Service Commission, 220 Miss. 439, 71 So.2d 176 (1954), the railroad desired to terminate passenger service on its lines, and after a hearing, the Commission ordered the railroad to continue its service. No appeal from the Commission order was taken. Instead, the railroad tried without success in the Chancery Courts of Harrison and Hinds counties to get a permanent injunction against the enforcement of the Commission's order. While getting temporary injunctions in both courts, they were later dissolved, the railroad was denied any permanent relief in the Chancery Courts. An appeal was taken from the decree of the Hinds County Chancery Court dissolving the temporary injunction and denying any relief. Upon appeal to this Court, one of the Assignments of Error of the railroad was that the order of the Commission amounted to taking the railroad's property without due process of law in violation of the United States and our state constitutions. In affirming we stated the following at p. 445 of the 220 Mississippi Reports, p. 177 of 71 Southern Second:
We have given the case long and thorough consideration and have concluded the Railroad did have a plain, adequate and complete remedy by appeal from the order of the Commission, to which resort was not had, and for that reason the present bill was not maintainable.
P. 448-49, 71 So.2d p. 179
In other words, the Commission is vested with extensive administrative and judicial powers in the adoption and enforcement of its administrative orders, and in the ajudication of its judicial functions, it necessarily has power to pass upon judicial questions, and the vested legal and constitutional rights of the parties, such as are involved in the case at bar  that is to say the extent of its power to *269 require the operation of the two trains here involved, whether its orders deny the carrier the due process of law under the facts of the case, and whether public convenience and necessity require appellant to make available such passenger service. And on appeal to the Circuit Court that tribunal has the power to view the findings and actions of the Commission, affirm, reverse, amend or change them, and from this action an appeal may be taken to this Court, where the actions, findings, and proceedings of both the Commission and the trial judge may be reviewed, affirmed, altered, remanded and changed, and from which action, where a Federal question is involved, appeal may be taken to the Supreme Court of the United States for such review by that Court. From this it is seen, we think, that the remedy of appellant, thus set out, is adequate and complete. [Emphasis added]
P. 451, 71 So.2d p. 180
However, every question presented in this proceeding could have been raised and passed upon had the procedure by appeal prescribed by the statute been followed ...
It is our opinion that the statutory method of appeal, theretofore set out, afforded appellant a plain, adequate, speedy, and complete remedy for a judicial determination of all the rights of appellant and all of the questions here involved.
See also: West Brothers, Inc. v. Mississippi Public Service Commission, 186 So.2d 202 (Miss. 1966); Everitt v. Lovitt, 192 So.2d 422 (Miss. 1966).
In the case of Oklahoma Gas and Electric Co. v. Lankford, 278 Ark. 595, 648 S.W.2d 65 (1983), the Arkansas Supreme Court faced the same question on jurisdiction as in this case. The electric company, following a hearing before the Arkansas Public Service Commission had a rate increase approved in part. The consumer respondents did not seek to intervene or request a hearing before the public service commission in Arkansas, but later filed an original complaint in Circuit Court. This was a class action suit for a declaratory judgment filed by the respondents as customers and rate payers of the electric company. The electric company filed a motion to dismiss, denied by the trial court, and the electric company then sought a writ of prohibition from the Supreme Court of Arkansas against the Circuit Court exercising jurisdiction in this case.
The Arkansas Supreme Court held there was no concurrent jurisdiction in the Circuit Court to exercise jurisdiction with the public service commission when there was a complete and adequate remedy by an application to the public service commission. The court stated, p. 66:
Here, ... respondents had a full, adequate, and complete remedy by intervention in the proceedings before the PSC. At that time the PSC could have ruled on the constitutionality of Arkansas Statutes Annotated § 73-217 and the other issues which respondents are now raising. The PSC, in exercising its exclusive jurisdiction over rate setting, can also pass upon questions of law that are germane and incidental to its legislative acts.
This case is really worse than the Arkansas case, because Mrs. Goudy's interest was represented by the same consumer class in the Bell rate increase, and she personally appeared in the power company rate increase case. Her counsel did not, either before the Commission, or on appeal to the Hinds County Chancery Court, seek to avail themselves of this constitutional protection sought in the Chancery Court of Forrest County.
The above holdings are not simply abstract principles of law, but have compelling reasons to support them.
The cost of operating the three-member Mississippi Public Service Commission for the past fiscal year was $3,099,855.00 (Chapter 157, Laws of 1982).[3] It is also *270 common knowledge that the overwhelming portion of the time, effort and energy of the Commission and its personnel is spent on rate cases such as these three. They are complex, exhaustive, and as noted, cost the taxpayers of this state millions annually. It is the height of waste of time and money for the Commission to be engaged in one of these cases, hear and determine it, spending hundreds of thousands of taxpayer dollars, and while the case is on appeal, have one of the parties go into a separate forum and seek to litigate a key question which should have first been presented to the Commission, and then to the Chancery Court of Hinds County exercising appellate jurisdiction.
Illustrative of this very observation is the monstrous anomaly we would create in affirming this case. On March 18, 1983, the Forrest County Chancery Court entered a judgment that Mississippi Power would have to repay all the increased rates it had charged since November 20, 1980. On appeal we decided on March 23, 1983, that 47.35% of the rate increase requested, or $18,611,256.00 annually would be approved.
The Chancery Court of Forrest County, ignoring the fact this case was pending before us, entered judgment that any payments made violated state constitution, and should be refunded, and no further rate increase charged.
This Court, unaware, of any such proceeding in the Forrest County Chancery Court, approved almost half the proposed rate increase.
How can these two judgments possibly be reconciled? Again, why should this Court be called upon to straighten out this kind of mess, as to conflicting judgments, when the entire matter could have been avoided by presenting the constitutional issue before the Commission, and before the Hinds County Chancery Court, and then this Court?

WAS THERE A DUE PROCESS VIOLATION?
This case was brought solely on the contention that Miss. Code Ann. § 77-3-39 violated the due process provision of Article 3, Section 14 of the Mississippi Constitution. Counsel for Mrs. Goudy were astute enough to eschew any claim that the statute violated the 14th Amendment to the U.S. Constitution, because there is a formidable array of authority to the contrary.
This likewise enabled the chancellor to escape giving any consideration to the 14th Amendment. He held there was a difference between our state constitution and the federal, and because of this different burden placed upon the utilities and the Commission under our state constitution, the statute was unconstitutional.
This reasoning is fallacious. Ordinarily, we might be able to terminate this discussion by demonstrating the fallacy of the contention that somehow there is a difference between the due process provision of the Mississippi and the United States Constitutions.
This, however, is a blind trail and does not address the really important due process question that bothers every Justice on this Court.
The central question is: does this statutory authority permitting a utility company to raise the rates it is going to charge in the future, and prior to a hearing determining what constitutes a fair and reasonable rate, violate due process?
Due process has been addressed by courts in so many different ways and defined in so many situations, it would take a lifetime just to read the cases. There is nothing mysterious about the term, however. To most of us its central meaning simply is even handed fairness in legal proceedings.
Going further, at first blush it would appear that there is very good authority from the United States Supreme Court itself that the above question would have to be answered in the affirmative.
In Fuentes v. Shevin, 407 U.S. 67, 32 L.Ed.2d 556, 92 S.Ct. 1983, cited in the dissenting opinion, replevin statutes in *271 Florida and Pennsylvania were declared to be violative of the Fourteenth Amendment because they permitted plaintiffs in replevin actions to have personal property seized and delivered to them upon making affidavit and a bond, but prior to any adversary hearing.
And, in Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62, the Supreme Court nullified an adoption proceeding in a Texas state court under a statute which, under certain circumstances, authorized an adoption hearing and judgment without the natural father being personally served.
Not only every lawyer, but most citizens are aware that no court can, under our Constitutions, take away property or valuable rights from any person without giving him fair notice and an opportunity to be heard.[4]
Under our state law consumers are entitled to fair and reasonable rates from utility companies. It may well be asked then: is it not unfair and violative of due process notions to permit a utility company to announce a raise in future rates without first having it determined by a commission or court, or both, that this proposed new rate is fair and reasonable?
This question goes to the very heart of the matter, and must be answered.
A utility company states that beginning one month from this date it is going to increase its monthly charge. Should I be required to pay this increase when there is a possibility that it will later be determined in legal proceedings that part or all of the increase is unreasonable? Or, should the utility company be prevented from increasing its rate in any amount until it has been determined in a commission hearing and on appeal through the courts that its proposed increase is reasonable and fair?
This is the balancing of rights with which we are faced.
The consumer has the unquestioned right under our law that the rates he is charged by a monopoly will be fair and reasonable.
On the other hand, the utility has the unquestioned right under our law to receive a fair and reasonable return for the services it renders.
Both the consumer and the utility unquestionably have valuable, imbedded rights under our law.[5]
We thus have a scale. On one side is the fair and reasonable rate to which the consumer is entitled, and on the other side the fair and reasonable return to which the utility is entitled.
We attempt through our public service commission to keep this scale evenly balanced. Yet, it is an economic impossibility that this scale at all times be evenly balanced. It is impractical, illusory to suppose that, given the economic conditions, the variables in the costs of running a multimillion dollar business enterprise such as a utility, there will not be periods of time when the scale is tilted one way or another.
The utility company is a profit making enterprise, run by businessmen, and no doubt will seek to charge the rate it thinks the traffic will bear. And, it must, at a minimum, receive enough to enable it to render efficient and continuous service.
Finally, we can agree that permitting a utility company to put a proposed rate increase into effect under bond can possibly result in a financial windfall to the utility. *272 This comes about by the company charging the increased rate over a period of time, sometimes as much as two years, with the court finally determining at least a part, perhaps even all, of the proposed increase was unreasonable. The company is then obligated to refund the increase plus the legal rate of interest to the consumer. On the other hand, it has saved itself from having to borrow money at a much higher rate of interest, or perhaps invested reserves at a higher rate of interest, which otherwise would have been spent in operating costs.
Let us look at the other side of the coin. What happens if the law tells the utility it can make no rate increase until the proposal has run its course through the Commission and appellate courts? And, it is finally determined that a part or perhaps all of the proposed increase was indeed fair and reasonable? For the year or two this matter is pending in litigation, the utility company has been deprived of its right to a fair return on its investment, with possibly no hope of receiving those rates it would have charged in the interim.
Would this pass a constitutional muster?
Even if it were constitutional, would this necessarily be in the public interest? The company is going to have to get its money somewhere at greater expense and some time or another it is going to get it back through increased rates. The state has cost the company more in the interim, with the consumer eventually having to pay more than he otherwise would be paying, when the matter is finally settled.
Aside from this, if our law is to prohibit an increase in rates until the legal proceedings are terminated, we will force utility companies to petition the Commission two or three years, or more, before a proposed rate increase, and we are going to have litigation based on speculation years into the future. And, one rate case will not be settled until there is another. In fact, we may have a single utility company with a series of proposed rate increases before the Commission and our courts at the same time. This could present an unsuperable burden upon the Commission, our courts, and the taxpayers.
It may very well be more practical and fair in the final analysis to permit utilities to increase their rates on a relatively short notice, and our Commission can examine economic conditions as they presently exist, or will exist in the near future, and not as experts think and argue they will exist in some distant future.
The Legislature in its wisdom may modify the law. The Legislature might decide to do more than simply require a refund plus legal interest on an increase later determined to be unreasonable. It could exact a stiffer penalty if a utility put an increase into effect more than ultimately found to be reasonable. It might even make it a crime on the part of the utility's officers and directors if the rate were found to amount to extortion.[6] But, these matters should be left solely with the Legislative branch of our government, which is capable of balancing the equities, the fairness and the practical problem faced. Courts are not equipped to do so. A decision on our part that no statute can be passed which permits a utility to raise rates prior to final hearing would put a straight-jacket on the Legislature we might all rue.[7]
Thus far I have only attempted to give what to me are practical observations about this troublesome problem.
Fortunately, the due process concept as expressed by our Courts in this state and elsewhere do not require a knee jerk reaction to Fuentes. We are authorized to recognize there can be differences in construing *273 what does and does not violate due process, according to the circumstances.
Justice Roy Noble Lee has covered the difference in his opinion so ably, I will not repeat what he has stated.
We must first bear in mind that Miss. Code Ann. § 77-3-39 is a law affected with the public interest.
The U.S. Supreme Court, speaking of the due process protection in a Federal proceeding under the Fifth Amendment, stated the following in Cafeteria Workers v. McElroy, 367 U.S. 886, p. 895, 81 S.Ct. 1743, p. 1748, 6 L.Ed.2d 1230, p. 1236:
The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation... . Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. It is compounded of history, reason, the past course of decisions ...
This Court stated in Mississippi Tax Commission v. Flora Drug Co., 167 Miss. 1, 148 So. 373 (1933), p. 376:
In passing upon an act of the Legislature to promote the public interest, we must allow a wide latitude, remembering that members of the Legislature may be more familiar with the situations and conditions. The Legislature has the power to make investigations and give painstaking consideration to the results thereof.
In Albritton v. City of Winona, 181 Miss. 75, 178 So. 799 (1938), p. 805, we stated:
The due process clauses of our constitutions must not be construed so as to put the state and federal governments into a straight-jacket and prevent them from adapting life to the continuous change in social and economic conditions.
The history of the regulation of public utilities reveals the 1956 Act, from which Miss. Code Ann. § 77-3-39 and related sections are codified, is a restriction, not an expansion, of long settled rights of public utilities.
The right of the consumer to reasonable rates from a utility exists under the common law, and aside from any statute. At the same time the public utility had the right to fix the charges it deemed reasonable. It was incumbent on the consumer to take the matter to court, and if the charge were found to be unreasonable, reparation would be awarded. See: Arizona Grocery Company v. Atchison, Topeka & Santa Fe Ry., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 369 (1931).
And, in that case, speaking of the authority of the Interstate Commerce Commission, the Court states, 284 U.S. p. 384, 52 S.Ct. p. 184: "That Act did not take from the carriers their power to initiate rates; that is the power in the first instance to fix rates, or to increase or to reduce them."
In United Gas Pipe Line Company v. Memphis Light, Gas & Water Division, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153 (1958), the U.S. Supreme Court held the initial rate-making and rate-changing power of natural gas companies remained undefined and unaffected by the Natural Gas Act and, like the seller of an unregulated commodity, having the right in the first instance to change its rates as it will. The Act came into play as to rate changes only in (1) imposing upon the seller the procedural requirement of filing timely notice of any proposed change, (2) giving the Federal Power Commission authority to review such change, and (3) authorizing the commission to suspend the new rates for a five-month period, and thereafter to require the posting of a refund bond pending a determination of the lawfulness of the rates as changed.
Section 10, Chapter 372, Laws 1956 (§§ 77-3-37, 77-3-39) imposes the same kind of restriction upon a state regulated utility.
The Act first requires that the utility, in order to make a rate change, must give the Commission at least 30 days prior notice of its proposed rate change.
The Commission is then required to give the public notice of the proposed rate change.
*274 After giving the Commission notice, the utility is authorized to make the rate change unless there is a complaint filed, or the Commission on its own initiative directs a hearing concerning the lawfulness of the rate.
Pending such hearing the Commission may "suspend the operation" of the proposed increase, that is, stop the increase going into effect, but not for a period longer than 90 days, with the further authority of the Commission to extend this 90-day period not to exceed six months from and after the date of the original notice from the utility.
If the Commission by order suspends the operation of the proposed increase, the utility has the right to file a bond in a reasonable amount, approved by the Commission, which will authorize the utility to go ahead and put its rate increase into effect on the date it originally proposed (which must be at least 30 days after the first notice to the Commission), pending final outcome of the hearing.
If the final order following the hearings is unfavorable to the utility, it has the right of appeal to the Chancery Court of the First Judicial District of Hinds County, under Section 26 of the Act (§ 77-3-67).
Upon appeal, and pending its review, the Chancery Court, under Section 27 of the Act (§ 77-3-69) has the authority to suspend the final order of the Commission and permit the utility to continue charging the increased rate upon filing with the Court a reasonable bond, approved by the Court.
After review by the Chancery Court, appeal may then be taken to this Court. No further bond is required to keep the increased rate in effect pending appeal in this Court, unless application therefor is made. Section 28 of the Act, Miss. Code Ann. § 77-3-71.
The above statutory procedure was scrupulously followed in each of the three rate cases.
Can this Court say that this procedure beyond all reasonable doubt was beyond the power of the Legislature to enact? Our Legislature, following a procedure almost identical to the Federal government, and other states throughout this nation, undoubtedly determined the procedure enacted for Mississippi was fair and reasonable.[8]
Sellers v. Iowa Power & Light Company, 372 F. Supp. 1169 (1974) is quite persuasive on the due process question raised in this case. That case addressed the identical question we have, and the Court found, after weighing the interests of the consumer, the utility, and the public, there was no deprivation of any due process right.
In conclusion, conceding for this discussion that having a right to a reasonable rate is a valuable right, it is certainly not a constitutional right, but a right which the Legislature may give or take away at any legislative session. Having this power, should we not concede to this body the power to decide the manner in which the right shall be accorded?
*275 Answering the initial question: I have a right (given me now by statute) to ultimate determination that the rate a utility charges is reasonable. But, when I walk in the electric company office at the first of the month to pay my bill, I have no right to have it legally predetermined that the amount I am required to pay for the month is fair and reasonable.[9]

FEDERAL AND STATE CONSTITUTIONAL RIGHTS THE SAME
The chancellor held that Article 3, Section 14 of the Mississippi Constitution gives different due process rights to individuals than Amendments 5 and 14 of the United States Constitution. Thus, the chancellor in his opinion stated our Mississippi Constitution is "much more restrictive than the due process clauses contained in the United States Constitution". [R. 1052] And, the dissent tells us our State Constitution is "... broader, more encompassing protection of individual rights". In any event, it is "different".
As noted by Justice Roy Noble Lee, this pronouncement ignores two landmark cases rendered by this Court.
Walters v. Blackledge, 220 Miss. 485, 71 So.2d 433 (1954), p. 444 states: "The due process required by the Federal Constitution is the same `due process of law' which is required by Section 14 of the Constitution of the State of Mississippi."
National Collegiate Athletic Ass'n v. Gillard, 352 So.2d 1072 (1977), p. 1081 states:
The basic decision of the case then is the simple statement that Gillard's "right" to engage in intercollegiate football is not a "property" right that falls within the due process clause of either Section 14 of the Mississippi Constitution or the Fourteenth Amendment of the United States Constitution, both of which are identical. [Emphasis added]
Fuentes v. Shevin, supra, involved state laws authorizing seizure and delivery of property to private litigants upon making bond.
Armstrong v. Manzo, supra, involved Texas statute permitting final judgment in adoption proceedings in certain instances without service upon a natural father.
In this case we are considering the due process violation of the utility companies who, acting under a state statute, raise their rates under bond prior to final determination of the authorized rate.
At issue is whether or not the consumers are entitled to a notice and a hearing prior to the companies raising their rates.
It is thus clear that the due process concept applied in Fuentes and Armstrong is the same as this case.
While it is true the 14th Amendment proscription is against the states, the U.S. Supreme Court has interpreted this to mean that any state law, or any state legal proceeding which operates to deprive a person of due process of law violates the 14th Amendment to the U.S. Constitution. This is the precise state constitutional objection which the chancellor found to the Mississippi Statute, § 77-3-39.
As we held in Walters and Gillard, the rights guaranteed the parties in these rate cases under the Fourteenth Amendment to the United States Constitution and Article 3, Section 14 of the Mississippi Constitution are precisely the same. There cannot be a violation of the one without the other.[10]
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and PRATHER, J., join this opinion.
*276 BOWLING, Justice, dissenting:
This opinion makes a new wrinkle in the ever increasing wrinkles pertaining to this Court in the past couple of years.
The case, as obviously revealed by the already four different opinions, shows that it has been "batted around" for a considerable period of time. Studying all four previously written opinions, in addition to wrinkles in the Court, I have developed a new one on my forehead. Everyone has heard over the years of Shakespeare's "Much Ado About Nothing." With all deference, that is exactly the position of this case.
The legislature, shortly after the trial of the case by the chancellor, completely revised the law regarding the filing of rate increase by utility and public service companies. The filing of the request rate under refund bond, as was done in this case, and as was declared unconstitutional by the lower court, has been repealed by the legislature. There is no proceeding pending that would be affected whether the old statute is declared constitutional or not. Why in the world then cannot this Court spend its time on cases that have been pending for a year or more and not spend its time "spinning its wheels" on something that is moot.
I would come right out and say the obvious squabbling about this case is a waste of this Court's time. I would simply say that the question is moot and dismiss the appeal with prejudice.
DAN M. LEE, Justice, dissenting:
This appeal concerns the constitutionality of section 77-3-39 Mississippi Code Annotated (1972). That section allows a public utility to place rate increases into effect under bond without a hearing, notice, or a determination of the fairness and reasonableness of the increase. This cause was originally heard in the Chancery Court of Forrest County where the chancellor held that § 77-3-39 violates the due process requirement of Article III, § 14 of the Mississippi Constitution of 1890. After much consideration, I must dissent from the views expressed by the majority.
As the chancellor correctly found, there were no material issues of fact in dispute. I will waste little time in detailing the factual circumstances which led to this suit. It is sufficient to state that in October, 1980, Mississippi Power Company requested the Mississippi Public Service Commission to approve a $39,000,000 rate increase. Without approval from the Commission, notice to its customers or an opportunity for a hearing, Mississippi Power Company put that rate increase into effect under bond pursuant to § 77-3-39 in November, 1980. In April, 1982, Mississippi Power Company requested the Public Service Commission approve a 21.9 million dollar rate increase which was also put into effect under bond pursuant to § 77-3-39 without notice to its customers or an opportunity for a hearing. In April, 1982, South Central Bell requested that the Public Service Commission approve a $98,000,000 rate increase which was put into effect under bond pursuant to § 77-3-39 without notice to its customers or an opportunity for a hearing. Alvirena Goudy and the class of plaintiffs she represents are customers of these utilities who have been forced to pay the increased cost of their services resulting from the aforementioned rate increases.
Before deciding whether the placing of utility rate increases under bond without notice or opportunity for hearing is a violation of our State and Federal due process requirements, we must initially determine that Alvirena Goudy and the class of plaintiffs she represents have a legitimate property interest entitled to the protection of the due process clause. This inquiry is easily answered in the affirmative by reference to § 77-3-33 of the Mississippi Code Annotated (1972). The very first line of that statute reads:
No rate made, deposit or service charge demanded or received by any public utility shall exceed that which is just and reasonable.
*277 Therefore, by an express mandate of the state legislature, residents of this State have been granted an entitlement to utility rates which are just and reasonable. Furthermore, subsection (2) of § 77-3-33 establishes a property interest in continued and uninterrupted service from the public utility where the customer has abided by the reasonable rules established by that utility. The pertinent portion of that subsection reads:
Such utility shall furnish adequate, efficient and reasonable service, and may establish reasonable rules governing the conduct of its business and the conditions under which it shall be required to render service. (Emphasis added).
In Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), an analogous requirement of service was held by the United States Supreme Court to constitute the recognition of a protected interest. In that case the Tennessee courts had held that public utilities in Tennessee were obligated to provide service without discrimination or denial except for good and sufficient cause. The United States Supreme Court held that the recognition of the right to continued service constituted sufficient ground upon which to assert a "legitimate claim of entitlement" within the protection of the due process clause.
Evaluation of § 77-3-33 and the Craft opinion leave no room for doubt that the residents of this state have a legitimate property right and interest in just and reasonable rates and continued utility service where they have complied with reasonable rules established by the utility. Because this statute gives consumers a legitimate claim of entitlement to a just and reasonable rate, they may not be deprived of that entitlement with state participation without due process of law. See e.g., Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); North Georgia Finishing, Inc. v. DiChem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); and Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).
Due process guarantees are afforded to residents of this state by the Fourteenth Amendment to the United States Constitution and Art. III, § 14 of Mississippi Constitution of 1890. These provisions read as follows:
All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. (Emphasis Added).
U.S. Const. Amend. XIV.
Section 14. No person shall be deprived of life, liberty, or property except by due process of law.
Miss. Const. 1890 Art. III § 14.
Numerous decisions of this Court and the United States Supreme Court define the minimal requirement of procedural due process as reasonable advance notice and a meaningful opportunity to be heard. See Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).
In Mathews v. Eldridge, supra, this country's highest court wrote:
This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. Wolff v. McDonnell, 418 U.S. 539, 557-558, 41 L.Ed.2d 935, 94 S.Ct. 2963 [2975], 71 Ohio Ops 2d 336 (1974). See, e.g., Phillips v. Commissioner, 283 U.S. 589, 596-597, 75 L.Ed. 1289, 51 S.Ct. 608 [611] (1931). See also *278 Dent v. West Virginia, 129 U.S. 114, 124-125, 32 L.Ed. 623, 9 S.Ct. 231 [234] (1889). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." Joint Anti-Fascist Comm. v. McGrath, 341 U.S. 123, 168, 95 L.Ed. 817, 71 S.Ct. 624 [647] (1951) (Frankfurter, J., concurring). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 14 L.Ed.2d 62, 85 S.Ct. 1187 [1191] (1965). See Grannis v. Ordean, 234 U.S. 385, 394, 58 L.Ed. 1363, 34 S.Ct. 779 [783] (1914). (Emphasis Added).
424 U.S. at 333, 96 S.Ct. at 902, 47 L.Ed.2d at 32.
More recently, in Memphis Light, Gas and Water Division v. Craft, supra, the Supreme Court held:
"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 94 L.Ed. 865, 70 S.Ct. 652 [657] (1950).
436 U.S. at 13, 98 S.Ct. at 1562, 56 L.Ed.2d at 41.
Decisions of this Court interpreting our State Constitution have held that the same minimal requirements of reasonable advance notice and opportunity to be heard are guaranteed by Art. III, § 14 of the Mississippi Constitution of 1890. In Bouslog v. City of Gulfport, 112 Miss. 184, 72 So. 896 (1916) this Court held that an act which authorized boards of supervisors, mayors and boards of aldermen to erect seawalls, breakwaters and bulkheads for protection of public roads and streets along beaches or shores of any body of water was unconstitutional because it allowed the laying of special assessments on abutting property without any provision for notice to the owners of the property or an opportunity for those owners to be heard and object to the assessments. We there held that without express provisions for notice and opportunity to be heard before the tax was assessed, the act was unconstitutional on its face.
In In Re Savannah Consolidated School District, 208 Miss. 460, 44 So.2d 545 (1950), this Court held that the issuance of school improvement bonds without notice or opportunity to be heard constituted a violation of Article III, § 14 of the Mississippi Constitution of 1890.
Having established that residents of this state have a property interest in fair and reasonable utility rates and that that interest may not be usurped without reasonable advance notice and an opportunity to be heard, I turn now to § 77-3-39 itself. That section reads:
Whenever there is filed with the commission by any public utility any schedule or notice stating a rate or rates differing from the rate or rates theretofore in effect, the commission may, either upon complaint or upon its own initiative, upon reasonable notice, enter upon a hearing concerning the lawfulness of such rate or rates.
Pending such hearing and the decision thereon the commission, upon delivering to the utility affected thereby a statement in writing of its reasons therefor, may, at any time before they become effective, suspend the operation of such rate or rates, but not for a longer period than ninety days beyond the time when such rate or rates would otherwise go into effect. However, if the commission shall find that a longer time will be required for its determinations, the commission may extend the period for not to exceed six months from the date of filing such schedule or notice. Notwithstanding any such order of suspension, the public utility may put such suspended rate or rates into effect on the date when it or they would have become effective if not so suspended, by filing with *279 the commission a bond in a reasonable amount approved by the commission, with sureties approved by the commission, conditioned upon the refund, in a manner and to the parties to be prescribed by order of the commission, of the amount of the excess, with lawful interest thereon, if the rate or rates so put into effect are finally determined to be excessive. There may be substituted for such bond other arrangements satisfactory to the commission for the protection of the parties interested. During any such period when suspended rates are in effect under bond or other arrangement the commission may, in its discretion, require that the public utility involved shall keep an accurate account of payments made under the rate or rates which the public utility has put into operation in excess of the rates in effect immediately prior thereto.
If, after such hearing, the commission shall find any such rate or rates to be unjust, unreasonable or unreasonably discriminatory, or in anywise in violation of the law, the same shall be set aside and the commission shall determine and fix by order such rate or rates as will yield a fair rate of return to the public utility for furnishing service to the public and shall make and file its conclusions and findings of fact supporting such order. A copy of such order shall be served upon the utility in the manner provided in this article, and the rates fixed by the commission shall be the legal rates until changed as prescribed by this article. Rates in effect under bond, or other arrangements satisfactory to the commission, may be continued in effect by the utility under the terms and conditions of said bond or other arrangement pending final determination of any appeal. (Emphasis Added).
Because the Public Service Commission is charged with the duty of setting fair and reasonable utility rates, any increase in those rates is presumptively in excess of a fair and reasonable rate until such increase is approved by the Public Service Commission or the courts of this State. § 77-3-39 allows utilities to increase their rates to any level they may arbitrarily desire simply by posting a bond. There is no notice nor opportunity to be heard required by the statute. In effect, the statute allows utilities to demand payment for rates charged in excess of those determined to be fair and reasonable. Indeed, the utility has the right to discontinue service for nonpayment of such debts, all without notice or the opportunity for objection. This is exactly what happened to Alvirena Goudy and the class of plaintiffs she represents. Indeed, not even the Attorney General of the State of Mississippi, the judicially recognized consumer surrogate, was given notice. See State Ex Rel Allain v. Mississippi Public Service Commission, 418 So.2d 779 (Miss. 1982).
The problem and the deficiency in the statute were clearly explained in the chancellor's opinion as follows:
In the process established there now enters the fatal "Notwithstanding" clause in our statute. Under it, the utility may place the suspended rate into effect and this is done by the utility without notice to anyone and without any hearing whatsoever! Certainly there is notice and a hearing if there is no rate placed in effect under bond, BUT, nowhere in § 77-3-39 is there provided a notice and a hearing before the taking of the property under bond! This is the crux of the case. Under our law, even if a subsequent notice is given and a subsequent hearing had, on the rate under bond, such a subsequent notice and hearing are not provided for in the statute, and therefore would avail the utilities nothing. Any non-legislative attempt to salvage the statute by providing any such non-statutory notice and/or hearing at the time of the placing of the rate under bond would be a nullity. Simply because the consumer may later get a refund under the bond if the bonded rate is found to be unreasonable at some later time does not mitigate the damage the consumer has already suffered by not being afforded notice and hearing at the *280 time the rate under bond was instituted. Being deprived of the sacred constitutional rights of notice and hearing for a short time only, does not serve to mitigate the unconstitutionality of the deprivation.
(Emphasis partly supplied)
As noted by the chancellor, even deprivations which may ultimately prove to be only temporary if the rate increase is eventually determined unjust and unreasonable violate due process. A temporary and non final deprivation of property is nonetheless an illegal deprivation. Fuentes v. Shevin, supra; Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The guarantee of a refund if the rate increase is deemed unjust and unreasonable is certainly no comfort to a low income family who cannot spend the possibility of a refund under bond at the grocery store.
Certainly I recognize that denials of due process by a private party, without some form of state action, involve no constitutionally offensive claim. Lugar v. Edmondson Oil Co., supra, 457 U.S. at 939, 102 S.Ct. at 2755, 73 L.Ed.2d at 496; Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); McComb Equipment Co. v. Cooper, 370 So.2d 1367 (Miss. 1979). In the instant case, state action is inherent in the role of the Public Service Commission as it approves the utility's bond.
The appellants rely on Holt v. Yonce, 370 F. Supp. 374 (D.S.C. 1973) summarily affirmed, 415 U.S. 969, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974) (Emphasis added). This 1974 case was "summarily affirmed" without any written opinion whatsoever. The question presented dealt with injunctive relief under 42 U.S. Code § 1983 against a South Carolina rate under bond statute. Importantly Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) and Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), were decided after Holt. Because Eldridge and Craft are more recent and were decided by written opinion they provide us with some guidance whereas Holt does not. Indeed, the United States Supreme Court has written on the lack of precedential value of a case summarily affirmed without opinion:
"When we summarily affirm, without opinion, the judgment of a three-judge District Court, we affirm the judgment but not necessarily the reasoning by which it was reached. An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by this Court of doctrines previously announced in our opinions after full argument. Indeed, upon fuller consideration of an issue under plenary review, the Court has not hesitated to discard a rule which a line of summary affirmances may appear to have established." (citing numerous cases) (Emphasis Supplied)
Fusari v. Steinberg, 419 U.S. 379, 391, 95 S.Ct. 533, 541, 42 L.Ed.2d 521, 530-531 (1975).
Consequently, Holt has no value as binding precedent. Certainly it cannot be read to limit the doctrines clearly approved in cases such as Eldridge, supra, and Craft, supra which were decided after it.
Furthermore, the decision in Holt is inapplicable to the case at bar for another reason. Holt does not involve the concept of entitlement as it relates to just and reasonable utility rates. In Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the United States Supreme Court clearly held that a claim of entitlement "must be decided by reference to state law." Therefore, the Holt decision which grew out of South Carolina is certainly not precedent in determining what rights and benefits the State of Mississippi has secured unto its residents.
If due process and fundamental fairness are to have any meaning that meaning cries out in this case. To allow a utility to extract sums in excess of those determined to be just and reasonable simply amounts to a forced loan to that utility from the pockets of the rate-paying public. Whatever *281 procedure exists to insure that the unjust and unreasonable portion of that "loan" is returned to consumers comes too late. We have put the cart before the horse. The effect of permitting rate increases under bond without notice and the opportunity to be heard is that the consuming public has been effectively enslaved and forced to do the bidding of a powerful private interest. The refusal of the consumer to cooperate with this unconscionable system subjects him to a termination of essential services. Today's decision does an injustice to every citizen of this state by opening our collective pocket books to the whim of private interests whose foremost goal is personal profit. For that reason and those expressed above, I dissent. I would affirm the decision of the chancellor, provided however, I would not order refunds to the utility consumers in an amount in excess of:
(a) the increased rates put into effect under bond, plus
(b) interest at eight percent on the increased rates to the date of refund or to the date of PSC determination that the rates are just and reasonable (to the extent that the PSC may have been ultimately affirmed), minus
(c) all sums heretofore refunded and, minus further
(d) any and all parts of the increased rates ultimately determined to be just and reasonable.
BOWLING, J., joins in this dissent.
ROBERTSON, Justice, dissenting:
No doubt there was a time when the consumer's relationship with a utility was purely private and as such was governed by the law of contracts. That day has passed.
Utility rates in this state as elsewhere are today a function of state regulation. Our statutory law provides that a utility may only charge and a consumer may only be required to pay rates that are "just and reasonable". Miss. Code Ann. § 77-3-33 (1972). If by this statute the consumer has been given a legitimate claim of entitlement to a just and reasonable rate, he or she may not with state participation be deprived of that entitlement without due process of law. See e.g., Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); and Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).
I do not understand how it may be seriously questioned that Plaintiff Goudy has been vested with such a legitimate claim of entitlement to which due process protections have been attached. Cf. Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). I regard Goudy's right as a "property right" not because it seems so but because our law has decreed it so. Property, a creation of law, is not defined by reference to a dictionary or any supposed common sense notion, nor is it a function of value. It is a tangible or intangible that which our law protects from interference. International News Service v. Associated Press, 248 U.S. 215, 246, 39 S.Ct. 68, 63 L.Ed. 211, 223 (1918) (Holmes, J., concurring). When as here Mississippi law shields the consumer from having exacted from him more than a just and reasonable rate, it creates in him a property right. It is a property right every bit as real as the right to be free from termination of utility service without cause held subject to due process protections in Memphis Light Gas and Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).
Ultimately, nothing turns on whether the right affected here be characterized as a property right or some other kind of right. Constitutionally, due process safeguards attach to each person's life, liberty and property. Juridically due process guards each person's every substantial entitlement created and made legitimate and protected from interference by the positive law of the state. Compare Wolff v. McDonnell, 418 *282 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) with Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) and Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) with Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).
Plaintiff Goudy's legitimate entitlement to a just and reasonable rate was denied without a semblance of due process. The utilities put rate increases into effect without a by-your-leave, kiss-my-foot or, more importantly, a hearing. They just did it. That they did it pursuant to a state statute then in effect does not insulate their actions from due process attack. Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).
At a minimum due process requires reasonable advance notice and a meaningful opportunity to be heard. Mullane v. Central Hanover Trust Company, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Neither Goudy nor her surrogates, the Attorney General of the State of Mississippi [see State ex. rel. Allain v. Mississippi Public Service Commission, 418 So.2d 779 (Miss. 1982)] and the Public Service Commission, had such notice and opportunity prior to enforcement of the increased rates.
In fact and in law the rates here at issue have in part been held unjust and unreasonable. Mississippi Public Service Commission v. Mississippi Power Company, 429 So.2d 883 (Miss. 1983). But nothing turns on that proposition being authoritatively established before Goudy was entitled to due process. Put another way, that the utility may ultimately carry the day and obtain an administrative order or judicial decision that the increased rate is just and reasonable in no way precludes Goudy's and other consumers' right to be heard en route. In a replevin case the plaintiff creditor may hold a valid and perfected security interest and may ultimately be held entitled to the possession of the property, yet no one questions that the debtor has sufficient rights in the property that due process requires reasonable advance notice and opportunity to be heard prior to seizure. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). One need not hold the whole bundle of rights in property before a taking is subject to due process. It is enough that the person has some rights which are substantial. Similarly it is of no consequence that judicial determination may ultimately establish that what rights the person has ought be terminated in their entirety.
It may be said by the utilities that the deprivation here is only temporary, that the rate increase is protected by bond and that if it is ultimately determined unjust and unreasonable, the consumer's money will be refunded. Whatever force the argument may once have had it has now been authoritatively rejected. A temporary, non-final deprivation of property is nonetheless a "deprivation" in the terms of the Fourteenth Amendment. Fuentes v. Shevin, 407 U.S. 67, 84-85, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556, 572 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).
A final point need be mentioned. Denials of due process by a private party, no matter how offensive, do not give rise to a claim or defense cognizable in a court of law. This is so even where the private party claims authority from a state statute. Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); McComb Equipment Co., Inc. v. Cooper, 370 So.2d 1367 (Miss. 1979). There must be "something more" and that "something more" must be action by the state. Lugar v. Edmondson Oil Co., supra, 457 U.S. at 939, 102 S.Ct. at 2755, 73 L.Ed.2d at 496.
Lugar holds a procedural scheme embodied in Virginia's pre-judgment attachment statute to provide "something more". "... [T]he procedural scheme created by the statute obviously is the product of state action." 457 U.S. at 941, 102 S.Ct. at 2756, 73 L.Ed.2d 498. Mississippi's rate increase under bond procedural scheme in effect *283 when this action was brought is legally indistinguishable.
Lugar requires and then finds even "more": a state official participates in the seizure by executing the writ of attachment. We, too, have more. Before a rate increase may be put into effect, the utility must furnish a bond. The Public Service Commission, an agency of the state, approves the amount of the bond and the adequacy of the sureties. Miss. Code Ann. § 77-3-39 (1972). Approval of the bond is a condition precedent to the utility's authority to enforce the increased rate schedules; hence, more state involvement in denying Goudy her legitimate entitlement to a just and reasonable rate.
For these reasons, I agree with the Chancery Court that the rate increase under bond scheme as heretofore authorized by our statutes and as employed by Mississippi Power Company and other utilities denies to utility consumers the due process of law. I do not agree, however, that the Due Process Clause of this state's constitution is broader and affords greater protections than the comparable clause in the Fourteenth Amendment to the Constitution of the United States. I regard the two clauses as being essentially identical. See NCAA v. Gillard, 352 So.2d 1072, 1081 (Miss. 1977) and Walters v. Blackledge, 220 Miss. 485, 515, 71 So.2d 433, 444 (1954). Because federal due process jurisprudence is more completely developed in this area, I would affirm on the authority of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.
I respectfully dissent.
NOTES
[1] This line of cases has questions relating to replevin, garnishment, attachment, suspension of driver's license, repossession of household goods, termination of welfare benefits, etc., but not utility rate under bond.
[1] Thereafter the Commission entered an order suspending the rate changes from 90 days to six months, as authorized by statute. This was in order to give the Commission time to hear the case and enter the order prior to any proposed rate change being effective. Under the Act a utility can have its proposed rate increase suspended for a maximum period of six months. This is not material to this case, because Bell had made a bond.
[2] In this particular instance, when Mrs. Goudy's case was considered by the Forrest County Chancery Court, the "injury" had been inflicted, not by the Commission, but by the Hinds County Chancery Court. For, it was under the latter's order, not the Commission's, that the increased rates of Bell and Mississippi Power were being charged. More about this later.
[3] The cost of operating the Mississippi Supreme Court for the same period was $1,189,923.00, about one-third.
[4] In Fuentes the Court went so far as to declare a temporary deprivation of property proscribed in the 14th Amendment.
[5] I would also suggest that there is another vital interest to the consumer: uninterrupted and efficient service. Without this, everybody is unquestionably seriously harmed. While it is entirely possible that even though receiving reasonable rates, a utility company, because of waste, mismanagement, corruption, or unforeseen economic conditions may wind up rendering poor or spasmodic service, there can be but little doubt that even if it is operated in the best possible manner, but does not receive a fair and reasonable return, its service to the public will be impaired. The utility company has no constitutional obligation to render quality service and it is a monopoly.
[6] See §§ 7091-7093 Miss. Code 1930.
[7] Indeed the statute has been changed. It does not take more than a cursory examination of Miss. Code Ann. § 77-3-39 in effect when this case was tried, and the new statute § 77-3-39, however, to observe that under both the old and the new statutes a utility can increase rates under bond, and before final hearing. If we declared the old § 77-3-39 violates our constitution, the same issue could be envisioned under our present act as well.
[8] As noted, supra, the Legislature in 1983 enacted a new series of laws regulating public utilities in this state; Ch. 467, Laws 1983, with substantial changes in Chapter 372, Laws 1956. The present Act gives the utility the right to increase its rate upon 30 days' notice, as the former Act, unless the Commission directs a hearing which it is required to do in major rate changes. Pending the hearing the Commission may "suspend the operation" of the rate increase for a period not to exceed 120 days. If the Commission has not rendered its decision in 120 days, the utility may put the proposed rate increase into effect by making bond. Sections 15-16, Chapter 467, Laws 1983, Miss. Code Ann. §§ 77-3-37, 77-3-39 (1983 Supp.).

Also, appeal may be taken to the Chancery Court of the First Judicial District of Hinds County, where the Chancery Court has broader discretion than under the former Act, including authority to permit the utility to keep the increased rate in effect by making bond. Section 26, Laws 467, Miss. Code Ann. § 77-3-69 (1983 Supp.).
Although not necessarily persuasive, under the view of the dissent, the present Act would have difficulty passing constitutional muster. True, the Act has been changed, but the same constitutional issue remains under the 1983 Act.
[9] Significantly, the "injury" which was being inflicted upon Mrs. Goudy when her case was heard in the Chancery Court of Forrest County came, not from an order of the Commission authorizing the rate increase, but from an order of the Chancery Court of Hinds County, which authorized the rate increase under bond under Miss. Code Ann. § 77-3-69.
[10] The above opinion originated as a dissent. Portions of the original have been removed, and it has been amended to a concurring opinion. Neither did the author have the benefit of Justice Robertson's erudite dissent.